## Richmond.

## LONG V. FLORY & GARBER.

November 16, 1911.

Absent, Cardwell, J.

1. BROKERS—*Real Estate Agents—Contract to Sell at a Fixed Price—Commissions.*—Under a special contract between the owner of real estate, and an agent for the sale thereof, on commission, at a price agreed upon, the agent cannot recover his commission without proving that he has actually made a sale at the price stipulated (or, at least, procured a purchaser who was ready and able to pay the price named), unless it appear that his principal has wrongfully prevented the making of a sale at such price, which would have been made but for his interference, or has waived the strict performance of the contract. The agent may have made a hard contract, but, in order to recover, he is bound to show compliance with it.

2. BROKERS—*Commissions—Prevention of Sale.*—Where the owner of land has employed a broker to sell it at a fixed price, but the broker is not given the exclusive right to sell, a subsequent sale by the owner to a purchaser not procured by the broker is not a wrongful prevention of a sale by the broker which would otherwise have been made by him.

Error to a judgment of the Circuit Court of Rockingham county in a proceeding by motion for a judgment. Judgment for the plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Sipe & Harris,* for the plaintiff in error.

*Ira S. Flory* and *Edward C. Martz,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

91

This writ of error brings under review a judgment for $500, recovered by the defendants in error against the plaintiff in error as commissions for the sale of his farm. The case was submitted to the court without the intervention of a jury.

The material facts from the point of view of a demurrer to the evidence may be summarized as follows: In February, 1909, William C. Long, who was the defendant below, listed his farm with the plaintiffs, Flory & Garber, real estate brokers, for sale at the gross price of $16,800, of which sum, in the event of sale, Long was to receive $16,000, and the brokers a commission of $800. Thereupon the plaintiffs interested one Samuel Cline in the purchase of the farm, and at his request for a reduction in price it was fixed at $16,000, $15,500 to Long and $500 to the brokers. These latter terms were never modified, and the right of the plaintiffs to demand commissions was predicated upon the consummation by them of a sale at the price named. In point of fact, they never effected a sale at any price, and Cline explicitly testified that at no time would he have agreed to pay $16,000 for the farm.

It is not pretended that the plaintiffs possessed the exclusive right to sell, and in September, 1909, Long sold the farm to Rodeffer for $15,500. Rodeffer afterwards sold to Cline in circumstances which tended to show that he had purchased the farm for him in the first instance, though Cline denied the existence of any previous understanding or contractual relations between them on the subject. However that may have been, Long had no reason to suspect that Cline was interested in the purchase, if, indeed, such was the fact, until after the contract of sale to Rodeffer had been reduced to writing and signed by the parties.

There is really no conflict of evidence on the controlling features of the agreement between the plaintiffs and the defendant. The former were not to have a commission for

a sale at *any price,* but the price was fixed at $16,000; and unless and until a sale was effected at that sum (or, at least, until a purchaser had been procured who was ready and able to pay the price named), no claim to commissions could arise. Long would, therefore, have been within his rights if he had sold his farm directly to Cline for $15,500, unless, of course, in so doing he had thwarted a sale to him by the plaintiffs for $16,000. And there is absolutely no evidence of such interference.

The governing principle in this class of cases is clearly and succinctly stated in the syllabus by the court to *Parker* v. *National Mut. Bldg. & L. Ass'n,* 55 W. Va. 134, 46 S. E. 811, as follows: "Under a special contract between an owner of real estate and an agent for the sale thereof, on commission, at a price agreed upon, the agent cannot recover his commission without proving that he has actually made a sale at the price stipulated, unless it appear that his principal has wrongfully prevented the making of a sale at such price, which would have been made but for his intereference, or has waived the strict performance of the contract."

In that case the court, after stating that the plaintiff's contract for commissions was upon condition that he should sell the property, or procure a purchaser, at a price in excess of $3,000, observes: "It may have been a hard contract, and the plaintiff may have entered into it under a misapprehension of the law, but that cannot relieve him from the terms of his contract. In order to recover, he is bound to show compliance with it. This he has utterly failed to do, so far as the evidence shows, for he does not pretend to show that he procured a purchaser for the property, or made a sale of it, at a price which under his contract would have entitled him to commission."

This principle is sustained by the general course of decision on the subject. *McFarland* v. *Lillard,* 2 Ind. App.

160, 28 N. E. 229, 50 Am. St. Rep. 234; *Gellat* v. *Ridge,* 117 Mo. 553, 23 S. W. 882, 38 Am. St. Rep. 683; *Kost* v. *Reilly,* 62 Conn. 57, 24 Atl. 519; *Peet* v. *Sherwood,* 47 Minn. 347, 50 N. W. 241, 929; *Frazer* v. *Wyckoff,* 63 N. Y. 445; *Charlton* v. *Wood,* 11 Heisk (Tenn.) 19.

The learned judge of the circuit court rests the plaintiffs' right to recover upon the theory of prevention of performance by the defendant, but the evidence does not support that conclusion.

It follows from what has been said that the judgment must be reversed, and judgment will be entered for the defendant.

*Reversed.*