# Richmond

## CANNON V. BATES.

January 15, 1914.

1. BROKERS—*Commissions—Change of Price by Owner.*—If only one real estate broker is employed, and he contracts to furnish a purchaser of the land at a stipulated price, and he furnishes one whom the owner accepts, but in the negotiation the owner agrees upon and accepts a different price from that at which the agent was instructed to sell, such agent is entitled to his commission.

2. BROKERS—*Commissions—Several Brokers—Ignorance of Each Other's Employment.*—Where two or more brokers are authorized to make a sale of land, but are ignorant of each other's employment, the broker who was the procuring cause of the sale is entitled to the commission. If such broker is the efficient cause of the sale, the fact that another broker or the owner of the land himself takes the matter in hand and completes the sale, does not affect the right of such broker to the commission. Where two or more of such brokers have been endeavoring to bring about a sale which is formally consummated, each may have rendered meritorious services without which that result would not have been reached. In such a case, a discrimination must be made between them to ascertain whose services must be deemed to be the efficient and effective cause of the sale.

3. BROKERS—*Commissions—Several Brokers—Knowledge of Each Other's Employment.*—If two or more brokers are employed to sell the same land, and they know of each other's employment, and one of them is not more favored than another by the principal, the owner may sell to the purchaser who is first produced, and the broker producing such purchaser is entitled to the commission.

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Hill Montague* and *R. E. Byrd,* for the plaintiff in error.

*Garnett, Pollard & Smith,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action of assumpsit brought by John W. Bates, the plaintiff, a real estate agent, to recover commissions from Dr. James Cannon for services rendered in the sale of a lot lying in the city of Richmond. There was a verdict and judgment in favor of the plaintiff and to that judgment this writ of error was awarded.

It appears from the evidence, in which there is little conflict, that on October 18, 1910, the plaintiff wrote to the defendant that he had a party who was anxious to buy a lot on the thoroughfare upon which the defendant's property was situated, and requested the defendant to advise him what was the lowest price he would take for the lot, and asked an early reply. On the next day the defendant, who after receiving the letter had come to Richmond, 'phoned the plaintiff's place of business that he would sell the lot at the price of $160 per front foot, but that he would not give him an exclusive agency to sell the property at that or any other price as the property was already in the hands of Elam & Funsten (real estate agents) for sale. On the 20th of that month the plaintiff offered the lot to Henry W. Wood at the price named ($160 per front foot). Wood made an offer in writing of $150 per front foot. This offer was taken to the defendant by the plaintiff, who urged or advised its acceptance. The defendant declined to accept the offer. It was then agreed between the plaintiff and defendant that the defendant would see Mr. Elam of the firm of Elam & Funsten (through whom the prop-

'erty had been purchased by the defendant) and advise with him as to the value of the property, but was requested not to tell Mr. Elam who the proposed purchaser was. The defendant did see Mr. Elam on the next day, the 21st of October, and was advised that the property was worth, if divided into two lots, $175 per front foot for the corner lot or $170 per front foot for the whole. The defendant 'phoned from Elam & Funsten's office to the plaintiff that Mr. Elam advised him not to sell the land for less than $175 for the corner or $170 for the whole lot per front foot. The plaintiff thereupon went to see the defendant who authorized him to sell the corner lot at $175 or the whole at $170 per front foot. The plaintiff notified Mr. Wood that his offer of $150 had been declined and informed him of the advanced price the defendant had placed upon the lot, and that other agents had valued the property at more money, mentioning Mr. Elam as one of them. Mr. Wood declined to increase his offer, but said he would see him later. On the next day, Saturday (the 22nd) the plaintiff left the city and did not return until the morning of the 26th. On his return he was informed that Mr. Wood had increased his offer to $160 per front foot. On the same day the plaintiff met the defendant on the street and told him that Mr. Wood had increased his offer to $160. The defendant said that he did not have time then to talk to him, but told him that price would not buy the property, or that he did not think he could accept that offer. The defendant had no communication with Mr. Wood, who had without his knowledge taken up the matter of the purchase of the property with Elam and told him that if he had known that his firm were agents for the sale of the lot he would have gone to them before going to the plaintiff; that Mr. Wood offered him (Elam) $160 per front foot for the corner lot, but he was told by Elam that it was useless to submit that offer to the defendant. Elam then advised Wood

that he had better take the whole lot, giving his reasons why it would be better to do so, and Wood requested Elam to get from the defendant the lowest price that he would take for the whole lot, saying that he (Wood) might be willing to give $165 per front foot for it. Elam at once saw the defendant, who named as his lowest price $167.50 per front foot if the whole lot was taken at once. Elam returned to Mr. Wood who agreed to give that price, and the deal was closed on the 26th of October, and the conveyance made in due course, the firm of Elam & Funsten deducting the usual commissions for selling in their settlement with defendant.

Mr. Elam testified that after effecting the sale he met the plaintiff, who said to him that he understood his firm had sold the property and asked the price obtained. When told, he expressed surprise, as he had learned that Mr. Wood had advanced his offer to $160 and he supposed he had purchased at that price. The plaintiff then wrote the following letter to Dr. Cannon:

"Dear Sir:

"I see that a deed from you to Mr. H. W. Wood has passed, conveying the property at the northeast corner of Monument Ave. and Mulberry St., at the price of $15,703.13.

"I introduced Mr. Wood to this property and, as you are aware, negotiated with him for its purchase and I expect you to recognize my agency for this sale. My commissions are the usual ones charged, namely: 3 *per cent.* on the first $5,000.00, 2½ *per cent.* on the next $10,000.00 and 2 *per cent.* on the balance, making a total of $414.06 which I will thank you to remit at your earliest convenience.

"Yours very respectfully,"

To this letter Dr. Cannon replied as follows:

"Dear Sir:

"Your note received and in reply will say that I am much surprised at your letter. You did introduce Mr. Wood to this property, but you did not get an offer for the property that I would accept. When you made your offer of one hundred and sixty dollars ($160.00) I rejected it. Mr. Wood then took up the matter on his own motion with Elam & Funsten, stating to them that he thought perhaps they had some property to sell on Monument Avenue, and they told him they had and mentioned my property at once, and talked with me, and I told them that I would sell it for one hundred and seventy-five dollars ($175) for the corner, one hundred and seventy dollars for the entire frontage. They saw Mr. Wood and he was not willing to give that much, and I finally agreed to take one hundred and sixty-seven dollars and fifty cents ($167.50), and they sold the property at that price.

"I did not recognize anybody in the transaction except the parties who sold the property and Mr. Wood. I had a right to refuse to sell my property at the price you offered, and exercised that right, and I had a right to accept the price offered me by Elam & Funsten, and I exercised that right. If you desire to discuss the matter with those gentlemen, that is with you and not with me, but it is rather amazing to me that you should think for one moment that I am under obligation to you when you could not get the price for the property I demanded.

"Regretting that you should have any such feeling about it, I am

"Sincerely yours,"

The errors assigned are to the action of the court in giving and refusing instructions, and in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

The plaintiff offered five instructions and the defendant three. Of these the court gave No. 1 as asked for by the defendant, amended and gave No. 1 offered by the plaintiff, and rejected all the others.

The plaintiff's instruction as amended was as follows: "The court instructs the jury that if they believe from the evidence that the defendant authorized the plaintiff to sell his property at the northeast corner of Monument Avenue and Mulberry Street at one hundred and seventy ($170) dollars a front foot, and that the plaintiff, acting on said authority, interested Mr. H. W. Wood in said property as a prospective purchaser and gave his name to the defendant as a prospective purchaser, and that thereafter the defendant, either personally or through agents, negotiated for the sale of said property with said Wood and afterwards, while authority to plaintiff was unrevoked, sold said property to said Wood for one hundred and sixty-seven and one-half dollars ($167.50) a front foot, and that the services of the plaintiff in interesting said Wood in said property procured the subsequent sale which was made, then the plaintiff was the procuring cause of said sale, and they should find for the plaintiff and award him such compensation for his services as they believe reasonable, fair and just under all the facts and circumstances of the case.

"If the jury do not believe from the evidence that the services of the plaintiff brought about or procured the sale which was made, then they should find for the defendant."

The defendant's instruction No. 3, rejected by the court, told the jury that, "if they believe from the evidence that the defendant had placed his property in the hands of several real estate agents to sell, and that the plaintiff and Elam & Funsten were among that number, then the agent who procured a purchaser ready and willing to complete the purchase upon terms satisfactory and agreed to by the defendant is entitled to commissions on the sale, to

the exclusion of all other agents; and if the jury believe from the evidence that Elam & Funsten first secured from Henry W. Wood an offer to purchase the lot in question at the price of $167.50 per front foot, which was accepted by defendant and the sale made to Wood at that price, then they are instructed that the plaintiff is not entitled to recover in this cause, and they must find for the defendant."

These two instructions substantially present the contentions of the plaintiff and defendant as to the proper rule or principle of law by which the right of the plaintiff to the commissions sued for was to be determined. Whether or not the court erred in giving the one and refusing the other depends upon the question whether or not the same rule of law is applicable to a case like this, where two or more real estate brokers are authorized to make sale, each knowing of the other's employment, and a case in which there is only one broker, or if more than one they do not know of the employment of each other.

If only one real estate broker is employed, it is settled in this State, and generally it is believed, that where such broker contracts to furnish a purchaser of the land at a stipulated price, whom the owner accepts, and in the negotiation the owner agrees upon and accepts a different price from that at which the agent was instructed to sell, such agent is entitled to the commissions. *Paschall & Gresham* v. *Gilliss,* 113 Va. 643, 75 S. E. 220; 2 Clark & Skyles on Law of Agency, p. 1682.

It also seems to be the general rule that where two or more brokers are authorized to make sale of land, but are ignorant of each other's employment, that the broker who was the procuring cause of the sale is entitled to the commissions. Where such broker is the efficient cause of the sale, the fact that another broker, or the owner of the land himself, takes the matter in hand and completes the sale does not affect the right of such broker to the commissions.

2 Clark & Skyles on Law of Agency, p. 1682, and cases cited in note. Where two or more of such brokers have been endeavoring to bring about a sale which is formally consummated and each may have rendered meritorious services without which that result would not have been reached, a discrimination must be made between them to ascertain whose services must be deemed to be the efficient and effective cause of the sale. *Whitcomb* v. *Bacon,* 170 Mass. 317, 49 N. E. 742, 64 Am. St. Rep. 317; 2 Clark & Skyles &c. p. 1683 and cases cited in notes.

While the cases are not in accord, the better rule seems to be that where two or more brokers are employed and they know of each other's employment, and one of them is not more favored than another by the principal, he may sell to the purchaser who is first produced, and the broker producing such purchaser is entitled to the commissions. 2 Clark & Skyles on Agency, p. 1683; 19 Cyc. 260; and *Chaffie* v. *Woodren,* 48 Col. 34, 108 Pac. 995, 139 Am. St. 220, and cases cited in notes to each.

In the case of *Vreeland* v. *Vreeland,* 33 N. J. 247 (a leading case) the reasons for this rule are stated very clearly by Chief Justice Beasley. Where the brokers know of each other's employment he says, "each is aware that he is subject to the arts and chances of competition. If he finds a person who is likely to buy and quits him without having effected a sale, he is aware that he runs the risk of such person falling under the influence of his competitor— and in such case he may lose his labor. This is a part of the inevitable risk of the business he has undertaken. On the other hand, if fortune should be propitious, a bidder for the property on sale, who has been selected by his rival, may come to him and by his means effect the bargain. Now in the competition the vendor of the property is to remain neutral; he is interested only in the result. But when either of the agents thus employed brings a purchaser to

him and a bargain is struck at the required price, on what ground can he refuse to complete the bargain? Can he say to the successful competitor, this purchaser was first approached by your rival, and you should have refused to treat with him on the subject? There is no legal principle upon which such a position can rest. It is contrary to the usages of every day commerce. Every advertisement of a stock of goods for sale has a tendency to carry off the customers of rival dealers; and if, therefore, it should be known to the vendor of the property that the agent who introduces a purchaser to him has by the usual arts of competition, taken such purchaser out of the hands of his rival, I am not aware of anything in the law which would justify such vendor in refusing to complete the contract. The task would be difficult and the risk great if vendors were called upon to decide between the claims of contestants. How would it be possible for such vendor to say whose influence it was that produced the sale, where the purchases has been solicited by both agents? It would be at variance with all practical rules to require the party selling to pronounce, under the penalty of paying double commissions, upon the metaphysical question, which agent under the circumstances was the efficient cause of the sale. In the absence of all collusion on the part of the vendor, the agent through whose instrumentality the sale is carried to completion is entitled to the commissions."

In *Francis* v. *Eddy,* 49 Minn. 447, 449, 52 N. W. 42, 44, Judge Mitchell, in speaking for the court, said, in a case very much like the case under consideration: "The plaintiff knew that the property was also listed with another broker and hence that he was subject to the chances of competition, and that if he entered into negotiations with a prospective customer and before any sale was effected the party went to the competitor, or fell under his influence, he was liable to lose his labor. This was one of the inevitabe risks

of the business. All there is of this case is that the plaintiff attempted to procure Collum as a purchaser for the property for $10,000, and did not succeed, or at least had not when Collum went to the other broker, who succeeded in selling to him at $9,500. We fail to see how in this state of facts it can be claimed that the plaintiff procured a purchaser for the property. Owners have the right to place their property with more than one broker; but if the plaintiff can recover upon the facts of this case, such owners, however honestly and impartially they may have acted, would be placed in a most embarrassing position and subjected to the liability of paying double commissions in every case where it could be shown that the purchaser produced by one broker had ever spoken to the other broker about the property."

In *Edwards* v. *Pike,* 49 Tex. Ct. App. 30, 107 S. W. 586, the owner of land employed two brokers to sell the same, each having knowledge of the other's employment. One of them secured a prospective purchaser, upon terms agreed to by the owner, but before any agreement with such purchaser was reduced to writing so as to bind the purchaser, the other broker consummated the sale to that person under terms which though more favorable to the purchaser, were satisfactory to the owner. *Held,* that the owner was liable for commissions only to the broker who actually consummated the sale. The court said in that case, that "In the absence of special circumstances which would make it proper to so charge him, the owner ought not to be held liable for commissions to more than one broker, and after actually selling his property to a purchaser produced by one broker on terms negotiated by such broker and not by another, he ought not, before paying him the commissions as suggested by the charges refused, at his peril, to determine whether some other broker was not in fact the procuring cause of the sale. In such a case the risk of finally

effecting by his agency, on terms agreed upon between him and the buyer, a sale of the property, ought to be borne by the broker. His services toward effecting one are performed with a knowledge on his part that another broker has authority similar to that conferred upon him; and if before a sale is completed the buyer quits him and on other terms consummates it through another agent, it is a contingency he should be held to have contemplated at the time he undertook the service, and about the happening of which he has no right to complain."

Again, the court said: "The broker who undertakes a sale of property with full knowledge that another broker has also undertaken to sell, ought to expect no more of the owner than that he will not interfere in favor of the one or the other."

In *Higgins* v. *Miller*, 109 Ky. 209, 58 S. W. 580, it was held that when property has been listed for sale with different real estate agents, the agent who induces the seller and the purchaser to enter into the contract is entitled to the commissions, though another agent may have first brought the parties together, and when the property is with the plaintiff's knowledge in the hands of several agents, the rule of non-interference applies only to the owner, and the agent who first actually sells the property is entitled to the commission.

In *Glascock* v. *Vanfelt*, 100 Tenn. 603, 46 S. W. 449, it was said that "when a principal employs more than one broker, and the several brokers act independently and with knowledge of this fact, the one who first completes a sale is entitled to the commissions."

In *Ward* v. *Fletcher*, 124 Mass. 224, it was said by C. J. Gray (afterwards Mr. Justice Gray) in a case where the plaintiff did not have the exclusive right to sell: "One broker who is unsuccessful in effecting a sale does not become entitled to commissions upon the success of another."

In *Scott* v. *Lloyd,* 19 Colo. 401, 35 Pac. Rep. 733, it was said that "it is beyond question that the plaintiffs produced the purchaser to whom they (the land owners) sold and conveyed the property, and they were not bound to inquire what part, if any, other agents had in the transaction. They could remain neutral as between competing agents and, by paying the commissions to the one who brought the purchaser to them, be relieved of liability to any other."

In *Nation* v. *Harness,* 33 Okla. 630, 126 Pac. 799, it was held that when property has been listed for sale with different real estate agents the agent who induces the seller and purchaser to enter into the contract is entitled to the commissions, although another agent may have first brought the parties together.

It follows from what has been said that we are of opinion that the instruction "b" given by the court did not state the law applicable to the facts of this case, and that the defendant's instruction No. 3 did, and that the trial court erred in giving the one and in refusing to give the other.

Without discussing the other errors assigned, the court is of opinion that the judgment complained of must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial, to be had not in conflict with the views expressed in this opinion.

*Reversed.*