# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## R. G. MITCHELL v. J. HUEY HUGHES AND DAVID ASHFORD HUGHES.

### November 12, 1925.

1. BROKERS—*Commissions—Good Faith of Broker—Misleading Principal.*— A broker cannot recover commissions unless he acts in good faith throughout the transaction and does not either actively or passively mislead his principal into a belief reasonably entertained that the broker was not the procuring cause of the sale.

2. BROKERS—*Prerequisites to the Recovery of Commissions.*—Under a special contract between an owner of real estate and an agent for the sale thereof, on commission, at a price agreed upon, the agent cannot recover his commission without proving that he has actually made a sale at the price stipulated, unless it appear that his principal has wrongfully prevented the making of a sale at such price, which would have been made but for his interference, or has waived the strict performance of the contract.

3. BROKERS—*Action for Commissions—Duty of Disclosure to Principal— Case at Bar.*—In the instant case, an action by a broker for commissions, the broker under his agreement had no exclusive or unlimited authority to sell, as the authority was strictly limited. The minimum price was limited to at least $30,000, and if the broker received an offer of a smaller amount he would be required to submit it to the vendors, who would then have a right to determine whether they would sell for less than $30,000. Five months after the agreement between the broker and vendors, purchaser asked the broker for an option at $28,000. In the broker's presence and without any intimation from the broker to his principals, the vendors, that he had any connection with the offer, the purchaser wired the vendors an offer of $100 for a thirty days option at $28,000 cash. The vendors, without any notice or intimation of the broker's connection with the telegram, wired their acceptance. Until the vendors had closed the option and bound themselves to convey the property, they had no intimation that the plaintiff broker had any connection whatever with the sale.

   *Held:* That the broker could not recover commissions.

4. BROKERS—*Commissions—Vendor Reducing Price.*—Where, under a special contract between an owner of real estate and a broker for the

sale of real estate at a price agreed upon, the agent having failed to secure a purchaser at the price fixed, acting in good faith introduces a purchaser to the vendor, and in the subsequent negotiations the vendor reduces his price, the agent who so acts in good faith is nevertheless sometimes entitled to his commission.

5. BROKERS—*Good Faith—Disclosures—Notice to Principal.*—It follows from the general rule requiring a broker to act with the utmost good faith towards his principal, that he is under a legal obligation to disclose to his employer all facts within his knowledge which are or may be material to the matter in which he is employed, or which might influence the action of his employer in relation thereto. As a general rule, the broker must notify the principal that he had found a customer, and of the offer made by the customer; otherwise he is not ordinarily entitled to a commission.

6. BROKERS—*Good Faith—Disclosures—Notice to Principal—Case at Bar.*— In the instant case, an action by a broker for commissions, the broker found it impossible to find a purchaser who was willing to pay $30,000, the price fixed for the property, but found a prospective purchaser who was willing to pay $100 for an option at $28,000. This imposed upon the broker the duty frankly to inform his principals of these facts and to transmit the offer to them with his honest advice as to whether, in the vendors' interest, the proposition should be accepted or refused. And where the vendors accepted the offer of the prospective purchaser in good faith and in ignorance of the broker's connection with it, the broker was not entitled to recover commissions.

Error to a judgment of the Circuit Court of Clarke county, in a proceeding by attachment. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Jos. F. Moore* and *T. Russell Cather,* for the plaintiff in error.

*R. Gray Williams* and *Frank M. Wray,* for the defendants in error.

PRENTIS, P., delivered the opinion of the court.

This is a proceeding by attachment, instituted by Mitchell against J. Huey Hughes and David Ashford Hughes, for the purpose of establishing the plaintiff's claim, as a real estate broker, to commissions on the purchase price of land sold by the defendants directly to George H. Burwell, Jr.

The plaintiff broker and the purchaser lived in Clarke county, Virginia, while the vendors, the defendants, lived in Texas, and the entire contract between them is evidenced by telegrams and letters.

Prior to January 13, 1923, the plaintiff received from J. Huey Hughes a telegram that he would take $28,000 net for "Clay Hill." Then, on January 13, 1923, Mitchell telegraphed: "Can get twenty-eight cash. What shall I do." In reply to this, Hughes wired the broker: "Would consider twenty-eight cash net to us on this deal." From that date nothing further passed between the parties until June 23, 1923, more than five months later, when the broker sent this telegram: "What price on Clay Hill? Is there five per cent. commission for me if I sell it?" The broker admitted that there was a reply to this telegram, but was unable to produce it. On June 17th, the broker wrote this letter:

"DEAR HUGHES:

"I hope you are well, good and happy, for I am all three. We have telegraphed each other back and forth, but as yet I don't know that you are willing for me to try and sell 'Clay Hill,' and that if I do succeed, whether you are willing to pay five per cent commission. Your last telegram was to ask $30,000, but you distinctly avoided commission. The one preceding it read: 'I suppose commission goes to the one that sells it.' At that time I could have sold it for a good price. The party offered $30,000, but being un-

able to find out as to commission I sold him (Frank Tilford) 'Milton Valley' for $50,000, 142 acres, and I think he would have given this for 'Clay Hill.' There were two others after him, but I had him sewed up. I don't ask for exclusive option on 'Clay Hill,' but as you told me you were going to put it in my hands to sell I naturally thought that you would, and if I am right, tell me if $30,000 is the price, and that you will or will not allow a five per cent commission to me, provided I make the sale, and if anybody else does and beats me to it I will take my hat off to them. Business is good at present. I sold two last week. You have a fair apple and wheat crop this year. With best wishes, I am,

> "Very sincerely yours,
>
> "R. G. MITCHELL."

To which Hughes replied on June 26th thus:

"DEAR ROY:

"Was very glad to get your letter of the 17th instant, but am awfully sorry to learn that you didn't sell 'Clay Hill' for $30,000.00 as I trusted you would. There seems to have been a great many misunderstandings about the commission. I thought you understood all the time that you were to receive five per cent commission on any sale unless I quoted you net, and when you telegraphed me 'do I get five per cent commission if I sell Clay Hill,' I didn't understand it as I naturally supposed that you knew that I would pay it, and I replied to your wire saying that the one who sold 'Clay Hill' received the commission. The place is not listed with anyone for exclusive sale; therefore the commission goes to the one who sells it. I don't understand why 'Clay Hill' doesn't sell at that

low figure of $30,000, but of course I am not familiar with Milton Valley, which, as you say, was sold for $50,000. If we are out of line, I wish you would kindly let me know, but feel confident that you will not have any trouble in disposing of it at that price. At your convenience, if you let me hear from you, I would be greatly obliged, and with kindest personal regards, I am,

"Very truly yours,

"HUEY HUGHES."

The broker testified that he then interested the purchaser, Bu well

It is perfectly apparent from these letters and telegrams that the broker had no exclusive or unlimited authority to sell; that the minimum price was limited to at east $30,000, and that if he received an offer of a smaller amount he would be required to submit it o the vendors, who would then have a right to determine whether they would sell for less than $30,000.

Under this state of facts, five months thereafter, in November following, Burwell asked the broker for an option at $28,000. In the broker's presence and without any intimation from the broker to his principa's, the vendors, that he had any connection with the offer, Burwell, the purchaser, wired to Hughes at Dallas, Texas, thus: "I am authorized to offer you one hundred dollars for a thirty days option on Clay Hill place at twenty-eight thousand cash." The vendors (Hughes), without any notice or intimation of the broker's connection with the telegram, wired the purchaser, Burwell, November 13th: "Accept your offer of one hundred for thirty days option on Clay Hill at twenty-eight thousand cash. Please confirm." Thereupon Burwell had an attorney draw an option

contract pursuant to this offer and acceptance by wire which was signed by the vendors as of November 14, 1923, and then Burwell wrote to the vendors enclosing his $100 check therefor.

The vendors had heard nothing from the agent on the subject since the letter, heretofore quoted, of June 17, 1923. Then and only after this contract between the purchaser and the vendors had been closed, the plaintiff broker sent this telegram to the vendors, November 26, 1920: "Closed George Burwell on Clay Hill. He takes up his option. Shall I have deed prepared. Wire instructions. Letter follows." So that until the vendors had closed the option and bound themselves to convey the property, they had no intimation that the plaintiff broker had any connection whatever with the sale.

On the same day on which the broker sent this telegram, he wrote this letter:

"DEAR HUGHES:

"I have at last sold 'Clay Hill.' I only wish you could have gotten your thirty thousand for it. I tried him hard for thirty thousand, but he would only offer twenty-eight thousand, and wanted a thirty-day option on it, which, of course, I was unable to give without your consent, so I authorized him to write you offer and also for thirty day option, and yesterday I closed him. Shall I attend to the drawing of the deed for you and send it to you for signing, and, if so, shall I place money in bank here and let you draw on it, or send you certified check? If you have deed drawn there and filled in here don't forget the 'Jr.'—George Harrison Burwell, Jr. If there is anything I can do to help you don't hesitate to call on me.

                    "R. G. MITCHELL."

It will be seen therefrom that the broker states that he it was who authorized Burwell, the purchaser, to ask the vendors for the option. Thereafter, on November 30, the vendors telegraphed Burwell thus: "Telegram and letter from Mitchell, stating you exercised your option on Clay Hill for twenty-eight thousand cash. Do not understand Mitchell's position in this deal, as option and contract was made direct with you and price based on the understanding that no commission was to be paid. If you care to take over Clay Hill on this basis kindly wire me to that effect and I will have deed drawn." Burwell answered this telegram thus: "I have nothing to do with commissions. Please draw deed promptly." Thereupon the vendors instructed their attorney to draw the deed.

It is apparent from this correspondence that the plaintiff broker had no exclusive right to sell the property, and that his authority was strictly limited in the inception of the transaction by the telegram of January 13th, which repeated and emphasized the notification to the broker that the vendors would only consider a sale which would net them $28,000, and that upon a sale at that price no commissions would be paid; and again thereafter, by the letter of June 17, that if the broker sold for $30,000 he would be paid commission for his services.

The issue thus raised was submitted to a jury, who found for the plaintiff.

Among the instructions which the trial court gave was this: "The court instructs the jury that where an agent undertakes to procure a purchaser for land at a stipulated price and such agent does thereafter furnish a purchaser who is ready, willing and able to buy, whom the owner accepts, and in the negotiation of the transaction the owner agrees upon and accepts

a different price from that at which the agent was instructed to sell, still such agent is entitled to his commissions provided he acted in good faith throughout the transaction and does not either actively or passively mislead the principal into a belief reasonably entertained that he was not the procuring cause of the sale; and if the jury believe from the evidence that the defendants authorized the plaintiff to procure for them a purchaser for 'Clay Hill,' and that the plaintiff presented the property to the attention of the purchaser and was the means of putting the purchaser and the defendants in communication with each other, and that a sale by the defendants to such purchaser thereafter resulted, then they should find for the plaintiff, although the sale was made at a price less than that stipulated by the defendants in their contract with the plaintiff, unless they further believe that the plaintiff either actively or passively misled the principal into a belief reasonably entertained that he was not the procuring cause of the sale."

[1] It is manifest that this instruction is based on the uncontradicted facts which the record discloses, and that the jury were thereby instructed, in substance, that the plaintiff could not recover, unless he acted in good faith throughout the transaction and did not either actively or passively mislead the principal into a belief reasonably entertained that he was not the procuring cause of the sale.

The jury having disregarded this instruction, the evidence upon which it was based, as well as the other evidence, the trial court, on motion of the defendants, set aside the verdict and entered judgment for the defendants, which is here under review.

Upon the facts in this case it seems to us hardly necessary to do more than to cite a few precedents, among them two Virginia cases.

In *Long* v. *Flory*, 112 Va. 721, 72 S. E. 723, in which a broker was denied commissions, it is said: "There is really no conflict of evidence on the controlling features of the agreement between the plaintiffs and the defendant. The former were not to have a commission for a sale at any price, but the price was fixed at $16,000; and unless and until a sale was effected at that sum (or, at least, until a purchaser had been procured who was ready and able to pay the price named), no claim to commissions could arise. Long would, therefore, have been within his rights if he had sold his farm directly to Cline for $15,500, unless, of course, in so doing he had thwarted a sale to him by the plaintiffs for $16,000. And there is absolutely no evidence of such interference."

[2] The governing principle in this class of cases is stated in *Parker* v. *National Mut. Building & L. Ass'n*, 55 W. Va. 134, 46 S. E. 811, as follows: "Under a special contract between an owner of real estate and an agent for the sale thereof, on commission, at a price agreed upon, the agent cannot recover his commission without proving that he has actually made a sale at the price stipulated, unless it appear that his principal has wrongfully prevented the making of a sale at such price, which would have been made but for his interference, or has waived the strict performance of the contract."

These cases are cited with approval and followed in the recent case of *Leicht-Benson Corporation* v. *Stone & Co.*, 138 Va. 511, 121 S. E. 883.

In *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, 38 Am. Rep. 441, 9 A. L. R. 1199, note, this is said, referring to such special contracts where the agent has no exclusive right to sell: "He loses the labor and effort which were staked upon success. And in such event

it matters not that, after his failure and the termination of his agency, what he has done proves of use and benefit to the principal, in a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all that gives him no claim. It was part of his risk that, failing himself—not successful in fulfilling his obligation—others might be left to some extent to avail themselves of the fruit of his labors."

[3] So that, as the plaintiff was a special agent, with limited powers, to sell the property for not less than $30,000, and confessedly failed in his effort, he certainly is not entitled to recover upon that contract.

[4, 5] Of course, it is not meant by this statement to question that other rule, that even where, under such a definite contract, the agent has failed to secure a purchaser, he then acting in good faith introduces the purchaser to the vendor, and in the subsequent negotiations the vendor reduces his price, the agent who so acts in good faith is nevertheless sometimes entitled to his commission. That is not this case, and the rule stated thus in 4 R. C. L. 272, sec. 22, applies: "It naturally follows from the general rule requiring a broker to act with the utmost good faith towards his principal, that he is under a legal obligation to disclose to his employer all facts within his knowledge which are or may be material to the matter in which he is employed, or which might influence the action of his employer in relation thereto."

As a general rule, in such cases, the broker must

notify the principal when he has found a customer and of the offer made by the customer, otherwise he is not ordinarily entitled to a commission. 9 C. J. 615.

In *Handley* v. *Shaffer*, 177 Ala. 654, 59 So. 286, referring to this subject, it is said: "In such a case it is clearly his duty to disclose to his principal the fact that he has found a suitable purchaser; and, if the broker is aware that a person with whom he is negotiating is about to approach or has approached his principal with a view to dealing with him independently, it would be the broker's duty to inform his principal that such person is his customer, in order that the principal may protect his own as well as his broker's interests, by either declining to thus deal with the purchaser, or by so dealing as to make due allowance for the broker's commissions. Where the broker undertakes to himself effect the sale, the principal is not upon notice that every one who approaches him to buy may be a customer of his broker's, and he is under no duty to find out as he would be if he had employed the broker merely to find a purchaser for him. Nevertheless, the principal must act in entire good faith, and he cannot collusively or knowingly sell to his broker's customer, and by such interference defeat the broker's right to effect a sale and earn his commissions."

The test, where there has been concealment or suppression of facts, is well stated in *Veasey* v. *Carson*, 177 Mass. 117, 58 N. E. 177, 53 L. R. A. 244, thus: "The general rule is well settled that a broker must act with entire good faith towards his principal, and he is bound to disclose to his principal all facts within his knowledge which are or may be material to the matter in which he is employed, or which might influence the principal in his action, and, if he has failed to come up to this standard of duty, he cannot recover."

[6] Applying these sound principles to this case, it is apparent that the plaintiff broker cannot recover here. Such an agent owes to his principal the utmost good faith, so that the principal may adequately protect his own interests. The broker here, as he admits, found it impossible to find a purchaser who was willing to pay $30,000 for the property, but had found a prospective purchaser who was willing to pay $100 for an option at $28,000. This imposed upon him the duty frankly to inform his principals of these facts and to transmit the offer to them with his honest advice as to whether, in the vendors' interest, the proposition should be accepted or refused. This would have given the principals the information to which they were entitled in order to determine whether they would accept or reject the offer. There is nothing in the record which impugns the good faith of the vendors. Whether the sale would have been nevertheless made at $28,000, subject to the broker's commissions, does not appear, but it is apparent that it was made in perfect good faith on the part of the vendors, in ignorance of the broker's connection with it, and that the information to which they were entitled was withheld by the broker. Such a suppression of a material fact by such an agent defeats his claim to commissions, and the judgment is plainly right.

*Affirmed.*