# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## PATTON, TEMPLE & WILLIAMSON, INC. v. R. W. GARNETT.

### June 10, 1926.

1. REAL ESTATE BROKERS—*Compensation—Revocation—Instructions.*—An instruction that a real estate broker employed to sell certain property at a fixed price might recover commissions, if it found a purchaser at a smaller price and submitted his offer to the owner, who determined to accept it, but revoked the authority of the broker merely to avoid payment of the broker's commission, was in hopeless conflict with other instructions to the effect that before the broker could recover it must find a purchaser ready, willing and able to pay the price fixed between the principal and the broker.

2. REAL ESTATE BROKERS—*Compensation—Interference by Principal.*—When a broker is employed under a contract, undefined in duration, to find a purchaser at a stated price, the principal has no right during the continuance of the contract to interfere with his operations to that end, and if the interference of the principal prevents the procurement of a purchaser, he is liable to the broker. So if, during the existence of the contract and while the broker is endeavoring to bring a purchaser, found by him, to the point of making an offer at the price fixed by the owner, the latter seeks out the purchaser so found and sells to him at a lesser price, he may be made liable to the broker.

3. REAL ESTATE BROKERS—*Compensation—Revocation.*—When a broker is employed under a contract, undefined in duration, to find a purchaser at a stated price, the contract is subject at any time to revocation by the owner at his will, if the broker or agent has not been able to comply with its terms. The agreement of the agent is to procure a purchaser at a stated price, and, so long as he has not complied with agreement, it is manifest he has no cause of action. The contract is one of hazard, to the extent that the agent performs his services without compensation, if he does not find the purchaser. But the production of a purchaser at the agreed price is in the nature of a condition precedent, and is the very essence of the undertaking by the agent.

4. REAL ESTATE BROKERS—*Commissions—Revocation by Owner.*—The

owner may revoke at his pleasure, unless in doing so he wrongfully prevents the agent from making a sale at the price stipulated by the owner.

5. REAL ESTATE BROKERS—*Commissions—Revocation—Instructions—Case at Bar.*—In an action by real estate brokers to recover commissions an instruction that told the jury that plaintiffs might recover if they procured a purchaser at a price less than that agreed between them and their principal, and if the principal determined to accept said offer he could not revoke, was plainly erroneous. If the instruction was applicable to the case at all, the principal's right to revoke was not dependent upon an unexpressed mental desire or determination, and this phrase should have read, "and the principal had accepted said offer."

6. REAL ESTATE BROKERS—*Commissions—Revocation and Sale to Purchaser with Whom Broker had been Negotiating—Case at Bar.*—In the instant case plaintiffs, real estate agents, had an agreement with a landowner to sell his property at a stated price. They failed to find a purchaser at this price and the landowner sold the property to a purchaser with whom the plaintiffs had been negotiating, at a less price than that fixed between him and the agents. It did not appear that the owner terminated the agents authority in bad faith, nor in order to prevent them from earning their commissions on the price fixed, and unless plaintiff can show that the risk of failure was theirs, and reward could only come as "a consequence of his success."

*Held:* That the plaintiffs could not recover commissions.

Error to a judgment of the Corporation Court of the city of Danville, in a proceeding by motion for a judgment for money.

Judgment for defendant. Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*Harris & Harvey*, for plaintiff in error.

*Aiken & Benton*, for defendant in error.

McLEMORE, J., delivered the opinion of the court.

Plaintiffs are real estate brokers or agents in the city of Danville, and in November, 1923, were employed by Dr. R. W. Garnett, also of Danville, to sell a certain residence which he owned in that city.   Defendant contends that he fixed the price, at which he would sell, and gave the agent no other authority, "if they could get $13,000.00 for it they were at liberty to sell it.   Later on real estate conditions being somewhat unfavorable, it seemed we would not get that price and I told Mr. Ferguson I would take $12,000.00.   He tried for some little time and finally I told him I would take $11,000.00, net, and that is the lowest price at which I ever authorized him or any one else to sell it."   Ferguson was the man who represented the plaintiffs in their dealings with defendant.

The plaintiffs' testimony as to the character of their employment is found in the evidence of H. E. Ferguson:

"Q. When Dr. Garnett came to you about selling the house did he authorize you to sell at a specific price in advance, or did he employ you to get him a purchaser and submit the offers you got to him?

"A. He had an idea of what he wanted and he told me to see what I could get, and I would submit what I did get to him."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. What price was that?

"A. $13,000.00 one day and $12,000.00 the next.

"Q. Either $12,000.00 or $13,000.00?

"A. At that time, yes.   He said he would like to get $13,000.00.   I told him we could not do it.   I dickered with him a day or two and he suggested a price of $12,000.00, and so on down it went."

On cross examination Mr. Ferguson says:

"Q. What is the lowest price at which Dr. Garnett authorized you to sell his property?

"A. The lowest price he ever gave me was $11,000.00 to $12,000.00. The lowest price he ever authorized straight out.

"Q. You never were authorized to sell it for anything less than $11,000.00?

"A. Dr. Garnett was evidently hard pressed financially. He came to me every day or two to know if I could get a better offer.

"Q. Just answer the question, please. I understand you to say he never authorized you to sell it for anything less than $11,000.00.

"A. I believe that was the lowest proposition that he made. It was right around that.

"Q. That was the lowest one, you say? Did he ever make one lower than that?

"A. If he did, I do not recall it, and when the question arose in my conversation with Mr. Mitchell, it led me to believe    *    *    *    *.

"Q. I do not care about that. He never did authorize you to sell it for $11,000.00?

"A. I think that is right."

In regard to his offer of the property to the purchaser, he testifies:

"Q. What did you offer the property to Mr. Mitchell at?

"A. I told Mr. Mitchell it could be bought around $12,000.00. We were negotiating, but so far we could not get together. Dr. Garnett was anxious to sell and he liked the location.

"Q. What was the lowest price you gave Mr. Mitchell on it?

"A. I do not know that I can answer that question. I told him I would do the best I could. If he would make an offer on it, I would be glad to submit it, but I never offered it to Mitchell at a price of less than $11,500.00."

These excerpts from the evidence show the character of the employment, and the failure of the agents to make sale in compliance with the terms of their employment.

On the first trial of the case four instructions were granted at the instance of the defendant, namely "A, B, C and D," and "E" was given to the jury on the court's own motion, to all which the plaintiffs, by counsel, excepted:

"Instruction A.  The court instructs the jury that before they can find a verdict for the plaintiff in this case, they must believe that the plaintiff found a purchaser able, ready and willing to buy the house, sold at the price the plaintiffs were authorized to sell the place for by the defendant, or at a price satisfactory to the defendant.

"Instruction B.  The court instructs the jury that if they believe from the evidence that there was an agreement between Patton, Temple & Williamson, Incorporated, and Dr. R. W. Garnett, under which Dr. Garnett was to pay the said Patton, Temple & Williamson, Incorporated, a commission, provided they sold his house at either $13,000.00 or $11,000.00, and further believe that said Patton, Temple & Williamson, Incorporated, failed to make a sale at either of these prices, and that after they had failed to make the sale and their authority was revoked, Dr. Garnett himself made the sale at a reduced price to a man with whom Patton, Temple & Williamson, Incorporated, had been negotiating at a different price, then the said Patton, Temple & Williamson are not entitled to recover any commission for the sale, and the jury should find for the defendant.

"Instruction C.  The court instructs the jury that Dr. Garnett had the power to revoke the agency of

Patton, Temple & Williamson, Incorporated, to sell his home, and that if they believe from the evidence that Dr. Garnett notified said Patton, Temple & Williamson, Incorporated, he no longer needed their services in selling his home, and that no sale at the price fixed between Patton, Temple & Williamson, Incorporated, and Dr. Garnett, or satisfactory to him, had been effected up until time said notice was received, then the said Patton, Temple & Williamson, Incorporated, are not entitled to any compensation for subsequent sale made by Gr. Garnett.

"Instruction D.    The court instructs the jury that before Patton, Temple & Williamson, Incorporated, are entitled to recover commissions sued for in this case, they must show by the preponderance of the evidence either that it completed the sale of the house and lot formerly belonging to Dr. Garnett to Mr. Mitchell, at the price of either $13,000.00 or $11,000.00, or that it produced to Dr. Garnett a party able, ready and willing to buy the said property at a price satisfactory to Garnett.

"Instruction E.    The court instructs the jury that if they believe from the evidence that plaintiff found a purchaser who was ready, willing and able to pay $10,000.00 for the property, and submitted this offer to Garnett, with the name of the purchaser, and that Garnett determined to accept said offer, then he had no right to revoke the authority of plaintiff to sell, merely in order to avoid the payment of reasonable compensation to the agents for their services.    And if they believe the revocation as made was not *bona fide*, but was made to avoid paying for plaintiff's services, they should find for the plaintiff and allow reasonable compensation for their services.

"If the jury, however, believe that such revocation

was made *bona fide* without any such purpose, and a sale thereafter effected by Garnett personally, they should find for the defendant."

Mitchell, the purchaser, testifies that Ferguson was the first man who interested him in the property, and he gave Ferguson to understand he would not pay more than $10,000.00 for the property; that the lowest price Ferguson offered it to him was $11,500.00; that Dr. Garnett saw him Monday, November 26th, about buying the property and on that day he made a contract to buy it at $10,000.00.

Dr. Garnett testified that on Saturday, November 24th, he wrote a letter to the agents telling them that he revoked their authority as they "had been unable to make sale for me at the price I fixed." This letter was received by the agents on the same day.

[1] Instruction E, given by the court of its own motion, was in hopeless conflict with the other instructions. The basis for this instruction was evidence to the effect that Garnett had consulted a lawyer as to his right, without incurring liability for commissions, to sell to Mitchell at $10,000.00, the agents not having been able to procure a purchaser at $11,000.00 or more, in Mitchell or any one else, as they had contracted to do; and the contention by the plaintiff that it might be inferred from the testimony that Garnett had revoked the agent's authority in order that he might take advantage of a willingness on the part of the purchaser to buy for $10,000.00. Dr. Garnett denied that he revoked the authority for this purpose, and said he did not decide to negotiate with Mitchell for a sale to him at $10,000.00 until Monday morning.

[2, 3] The principles of law governing the case are fairly well settled in Virginia. It is established by our decisions that when a broker is employed under a

contract, undefined in duration, to find a purchaser at a stated price, the principal has no right during the continuance of the contract to interfere with his operations to that end, and if the interference of the principal prevents the procurement of a purchaser, he is liable to the broker. So if, during the existence of the contract and while the broker is endeavoring to bring a purchaser, found by him, to the point of making an offer at the price fixed by the owner, and the latter seeks out the purchaser so found and sells to him at a lesser price, he may be made liable to the broker. But such a contract as that stated is subject at any time to revocation by the owner at his will, if the broker or agent has not been able to comply with its terms. The agreement of the agent is to procure a purchaser at a stated price, and so long as he has not complied with his agreement, it is manifest he has no cause of action. The contract is one of hazard, to the extent that the agent performs his services without compensation, if he does not find the purchaser. But the production of a purchaser at the agreed price is in the nature of a condition precedent, and is the very essence of the undertaking by the agent.

It is further settled law in Virginia that in such a contract as the one we are considering, the owner has a right to terminate it by revocation at any time. As said in *Rucker & Co.* v. *Glennan*, 130 Va. 511 (on page 519), 107 S. E. 725, 728: "If the agent holds at will, it may be revoked at any time, with or without reason, unless coupled with an interest or the agent has proceeded with the performance; for if the agent has partly executed his authority, and then the principal revokes the unexecuted part, causing him damage, he must indemnify the agent to the extent of the damage caused."

[4] Two recent cases illustrate this principle clearly: *Leicht-Benson, etc., Corp.* v. *Stone & Co.*, 138 Va. 511, 121 S. E. 883; *Mitchell* v. *Hughes*, 143 Va. 393, 130 S. E. 225. In these two cases reference is made to the prior case of *Long* v. *Flory*, 112 Va. 721, 72 S. E. 723, and they enunciate the doctrine, in unmistakable terms, that the owner may revoke at his pleasure, unless in doing so he wrongfully prevents the agent from making a sale *at the price stipulated* by the owner.

In the instant case there is no pretense that Mitchell, the proposed purchaser, would have given $11,000.00 for the property; the evidence is affirmatively to the contrary effect.

[5] Instruction E, given by the court, is plainly erroneous as it assumes that the agent could earn his commission by procuring a purchaser at $10,000.00, and proceeds to tell the jury that if "Garnett determined to accept said offer he could not revoke," etc.

If the instruction was applicable to the case at all, Garnett's right to revoke was not dependent upon an unexpressed mental desire or determination, and this phrase should have read "and Garnett had accepted said offer."

[6] There was no such deceit or fraud in this case as comes within the purview of those words as used in the decided cases. In the case reported in 138 Va., 511, 121 S. E. 883, *supra*, Judge Prentis says:

"In the absence of deceit or fraud on the part of the owner, the broker is entitled to no commissions unless he finds such a purchaser, and such a special contract should not restrain the owner from seeking, in good faith, to find a purchaser for his property on different terms." The views expressed by Judge Prentis in his opinion show distinctly that what is meant by fraud and lack of good faith was such con-

duct on the part of the owner as to show an intent to deprive the agent of his commissions, *although he had or was about to procure a purchaser at the stated price.* Under the doctrine announced in the opinion (pages 516-517 [121 S. E. 883]) Garnett here was clearly justified in revoking the agency and selling directly to Mitchell, as by so doing he in no way interfered with the performance of their undertaking by the agents. As there said (page 515 [121 S. E. 884]): "A broker is never entitled to commissions for failing to perform his contract. To entitle him to his commissions he must succeed, and he takes the entire risk of failure for his reward comes only as a consequence of his success. He may devote his time and labor and expend his money with ever so much devotion to the interests of the owner, and yet if he fails to procure a purchaser, abandons his efforts, or his authority is fairly and in good faith terminated, he does not earn his commissions."

In the instant case the owner did not terminate the authority in bad faith, as the agent does not attempt to show that he did so in order to prevent him from earning his commissions on at least $11,000.00, and unless he can show that the risk of failure was his, and reward could only come as "a consequence of his success."

When the defendant made his motion for a new trial, the judge of the trial court very properly set aside the verdict of the jury, as he could only in that manner correct his error in giving instruction E.

As no question is raised concerning the subsequent proceeding in the case, the judgment is affirmed.

*Judgment affirmed.*