# 𝔖taunton

C. A. BLANKENSHIP AND JOHN D. NANCE v. T. J. CHILDRESS.

September 6, 1944.

Record No. 2801.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*Taylor & Broaddus*, for the plaintiffs in error.

*Whittle, Whittle, Joyce & Stone*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

T. J. Childress, a real estate broker, who will be referred to as the plaintiff, instituted an action at law in the court below against C. A. Blankenship and John D. Nance, for a broker's commission of $1,500, on a sale of a warehouse to one J. Clyde Mitchell, for $60,000. The case was tried by a jury, and a verdict in favor of the plaintiff for $1,500 was rendered, upon which the court entered a judgment.

The judgment is challenged upon the ground that the verdict was contrary to the law and the evidence, and without evidence to support it, and further on account of the alleged misdirection of the jury in instruction No. 1.

According to the evidence of the plaintiff, which the jury was authorized to accept, he had a verbal contract with Mr. Blankenship and Mr. Nance, the owners, to sell their warehouse for $60,000. His exact language is: "On November 28, 1941, I went down to see Mr. Blankenship and Mr. Nance and asked them were they interested in selling the warehouse; and they give me a price of $60,000, and then we got into the commission business; and I told them five per cent was the usual commission. and they said they wouldn't pay that, and I split my commission in half, which was $1,500, and we agreed on $1,500." He was then asked if anything was said about the sale being for cash, and he answered: "No, nothing said about the terms at all." And again he was asked: "Did the contract have any definite time to run?" He answered: "No, sir." He then testified that the contract was never terminated or abandoned by either of the parties.

The plaintiff sought out Mr. Mitchell, his customer, on the day the contract of agency was made, or the day after. Mr. Mitchell drove with him to the warehouse at that time for an inspection of the property, and then the plaintiff notified the owners that Mr. Mitchell was his customer.

The plaintiff describes his efforts to make the sale in these words: "I took him down there and showed him the warehouse, and then we come on back; and he liked the warehouse pretty good and he said business was so quiet then, and he didn't know whether they were going to be able to get cars and things to sell; and we kept on, two or three times a month I would approach him on it, and I told him in February of this year (1943) if he had to pay $5,000 more than it was worth, it would be worth it to him, on account of the location." The plaintiff further testified as follows: "Well, I went down to see Mr. Mitchell, I expect I will average two or three times a month talking to him about this warehouse, and talking to him about the space he would have, and also the space on the outside where he could park his cars, and the location. It was the right location for him." In February, 1943, the plaintiff met Mr. Blankenship on the street and inquired if he would take less for the warehouse, and he replied: "No, if anything he had thought about going up." The plaintiff continued his efforts to sell Mr. Mitchell in the early part of 1943.

On March 3, 1943, Mr. Blankenship and Mr. Nance sold the property to Mr. Mitchell without the intervention of their broker, the plaintiff, at the price of $60,000; $20,000 of which was in cash, and the balance of $40,000 payable in annual installments and evidenced by notes.

It is observed that the contract of agency was not of limited duration, and no terms were agreed upon as to how the $60,000 should be paid. This is clearly disclosed by the testimony of the plaintiff.

The position of the plaintiff is that he was authorized to sell the property at $60,000; that he found a purchaser, Mr. Mitchell, who was ready, willing and able to purchase the property for $60,000; that he, the plaintiff, would have

closed the transaction with Mr. Mitchell if the defendants had not themselves sold to him. Under these circumstances, the plaintiff claims to have been the procuring cause of the sale, and entitled to his broker's commission.

On the other hand, the defendants claim that there was no definite contract with the plaintiff because there was no agreement as to how the $60,000 was to be paid, that in the absence of such an agreement it had to be paid in cash, and inasmuch as the sale finally consummated was on credit as to $40,000, the plaintiff failed to find a purchaser who would pay the $60,000 in cash. The defendants also contend that the contract of agency was revoked, and if not revoked, it was abandoned by the plaintiff.

There is little difficulty about the law in cases of this kind. The trouble arises when the pertinent legal rules are to be applied to the varying facts presented. Judge McLemore, speaking for the court in *Patton* v. *Garnett*, 147 Va. 1009, at pages 1015-1016, 133 S. E. 495, says:

"The principles of law governing the case are fairly well settled in Virginia. It is established by our decisions that when a broker is employed under a contract, undefined in duration, to find a purchaser at a stated price, the principal has no right during the continuance of the contract to interfere with his operations to that end, and if the interference of the principal prevents the procurement of a purchaser, he is liable to the broker. So if, during the existence of the contract and while the broker is endeavoring to bring a purchaser, found by him, to the point of making an offer at the price fixed by the owner, and the latter seeks out the purchaser so found and sells to him at a lesser price, he may be made liable to the broker. But such a contract as that stated is subject at any time to revocation by the owner at his will, if the broker or agent has not been able to comply with its terms. The agreement of the agent is to procure a purchaser at a stated price, and so long as he has not complied with his agreement, it is manifest he has no cause of action. The contract is one of hazard, to the extent that the agent performs his services without compensation, if he does not find

the purchaser. But the production of a purchaser at the agreed price is in the nature of a condition precedent, and is the very essence of the undertaking by the agent."

From the evidence the jury could have found that the plaintiff was the procuring cause of the sale. He found the purchaser and showed him the building. He continued his efforts to make the sale over a long period of time, and just a short time before the sale was made by the defendants he was still attempting to sell the property to Mr. Mitchell. The jury also could have found that he would have made the sale to Mr. Mitchell if the defendants had not interfered. Whether the $60,000 was to be paid in cash or on terms, the jury could have found was an unimportant element, for there was evidence that no terms as to the $60,000 were expressed by the defendants in the agency contract, and later, when the sale was made by them, they did not require cash but voluntarily gave terms when the purchaser did not even request them.

In *Patton* v. *Garnett, supra,* relied upon by the defendants, there were entirely different facts involved. The owner in that case revoked the agent's authority in good faith by written notice before the sale. The price received was $1,000 less than the sale price authorized by the owner. In the present case the question of revocation was in dispute and submitted to the jury. The price received was the same as that which the agent was authorized to obtain.

In *Leicht-Benson Realty, etc., Corp.* v. *Stone & Co.,* 138 Va. 511, 121 S. E. 883, 43 A. L. R. 1100, the property was listed with the broker at $14,000. This price was not obtained by the broker. He had no authority under his contract to accept other property as a part of the purchase price. He succeeded in securing purchasers, two ladies, who were willing to exchange their property at an agreed value of $8,000, to be applied on the purchase price. This offer was submitted by him to the owner and the latter refused to accept it. A short time afterward the owner sold the property to the customers of the agent for $13,000, and as a part of the consideration accepted property from them of the value

of $8,000, and allowed that amount as a credit on the purchase price. There was a sharp conflict in the evidence as to whether the agent informed the owner of the names of the prospective purchasers who later bought the property. In that case this court refused to allow the broker's commission on the sale. It was held that the broker's contract was limited to selling the property at $14,000, and that the evidence failed to disclose that the purchasers were ever able to buy at $14,000, unless their property was taken in as a part of the consideration. After setting forth the general principles in such cases, the court concluded:

"Applying these principles to the facts of this case, we find nothing to indicate that the owner ever modified its contract with the broker, or ever conferred any authority whatever except authority to sell the property for $14,000. Nor do we find that the owner either wrongfully or otherwise prevented the making of such a sale at such a price, nor do we find anything from which it can be inferred that the owner has ever in any way waived the strict performance of its contract with the broker. All this being true, we are of opinion that the court erred, both in giving the instruction which permitted the jury to award the broker commissions under the contract, and also in refusing to set aside the verdict and enter judgment for the defendant owner."

It is quite clear that the broker, in that case, failed to find a purchaser who was willing to pay $14,000 for the property. He did, however, find purchasers who were willing to pay less, and who desired to exchange their property as a part of the consideration, but the owner refused to modify his contract with the broker. It is observed from the quoted portion of the opinion that the owner acted in good faith. He did not prevent the making of the sale either wrongfully or otherwise, and he never waived the strict performance of his contract with the broker.

Perhaps there may be difficulty in reconciling that case with those previously and subsequently decided by this court because it is obvious that the purchasers were produced by the broker. It could be, and no doubt was argued

that he was the procuring cause of the sale as finally made by the owner to the customers of the broker, and therefore a jury could have found as they did, that he was entitled to his commission.

In the case at bar, the owners contend that there was no agency contract because it did not state how the $60,000 was to be paid. The same was true in the *Leicht-Benson Case.* There the price was $14,000, but no terms were stated as to how it was to be paid. But the court did not hold that there was no contract because no terms were stated. It based its decision upon the fact that the agent was not the procuring cause of the sale.

The broker's contract, whereby he is empowered to make the sale of real estate at a stipulated price, is not void simply because there is no provision stated as to how the purchase price is to be paid. Such terms are not essential to the validity of such a contract. It is true that where there is no stipulation as to how the price shall be paid, that is whether on credit or for cash, generally it is held that the broker must produce a purchaser who will pay all in cash. 8 Am. Jur., Brokers, sec. 63. But that latter rule has no application to the facts in this case. Here the broker found a purchaser, was exercising reasonable efforts to close the sale with him, and the owners stepped in and took charge of his purchaser and finally closed the sale with him, ignoring the broker. The sale was made at identically the same price which the owners had given the broker. The owners clearly appropriated the benefit of the broker's service, and sought to defeat paying his commission.

It appears from the evidence in this case that the owners did not insist upon cash from the purchaser, but, of their own volition they extended credit to him, who not only did not request credit, but who might have paid all of the price in cash. The owners were required to exercise good faith. No doubt if the plaintiff had closed with the purchaser for the agreed price the parties would have agreed on the terms, if terms had been requested, or perhaps as suggested, Mr. Mitchell might have paid the entire purchase price in cash.

█ If the agency contract were intended by its provisions to require the broker to procure a purchaser who would pay $60,000 in cash for the property, and the plaintiff produced a purchaser who would pay only $20,000 in cash and $40,000 on terms, and the owners, by independent negotiations with the customer of the plaintiff, accepted the $20,000 cash and the $40,000 on terms while the agency contract was still in force, they cannot escape liability for the commission of the plaintiff. This is true even where the owner has closed a sale with a customer of the broker for a lesser amount than that authorized for the broker to obtain. If the defendants here chose to sell the property to Mitchell, the customer of the plaintiff, during the life of the contract for less than all in cash, that was their privilege, but they are "not permitted to reap the benefit of the plaintiff's labor and then deny him his just reward." *Paschall* v. *Gilliss*, 113 Va. 643, 75 S. E. 220, Ann. Cas. 1913E, 778; *Cannon* v. *Bates*, 115 Va. 711, 717, 80 S. E. 581; *Arwood* v. *Hill*, 135 Va. 235, 117 S. E. 603.

█ Of course, the situation is different where the offer submitted by the broker varies from the terms authorized by the owner, and no sale is made to the prospective purchaser of the broker. In such a case the broker would not be entitled to a commission because he would have failed to find a purchaser ready, willing and able to buy the property upon the terms authorized by the owner. *Long* v. *Flory*, 112 Va. 721, 72 S. E. 723.

In instruction No. 1 there were submitted to the jury several material issues upon which the witnesses had disagreed in their evidence. The jury were told that if the plaintiff had established the contract by the evidence, that pursuant thereto he had found a prospective purchaser, introduced him to the owners, and afterwards the owners sold the property to the purchaser at the agreed price of $60,000, and if the jury believed the plaintiff was the procuring cause of the sale, that the contract of agency had not been abandoned or rescinded, and that an unreasonable time for the sale had not elapsed, then they should find for the plaintiff.

That there was a contract could not be successfully denied. It was silent as to how the payment of the $60,000 was to be made. But, as we have already pointed out, this objection is not one the defendants are permitted to take advantage of under the facts in this case. From the plaintiff's evidence the jury, no doubt, found that he was the procuring cause of the sale, that the contract had been neither revoked.nor abandoned, and that under the circumstances an unreasonable time had not elapsed in which to make the sale. To find a purchaser and negotiate with him successfully for the sale of a $60,000 property, ordinarily, is not a simple matter. Prospects for the purchase of a warehouse, financially able to pay such a substantial sum, are not very numerous and, conceivably, it might be necessary for the negotiations to continue over many months. This, and the other issues, were for the jury, and we think instruction No. 1, along with the others granted, correctly applied the appropriate legal rules to the facts.

The judgment is affirmed.

*Affirmed.*