# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## LEICHT-BENSON REALTY AND CONSTRUCTION CORPORA-
TION v. J. D. STONE & COMPANY, INCORPORATED.

### March 20, 1924.

#### Absent, Kelly, P.

1. BROKERS—*Real Estate Brokers—Commissions—Necessity of Contract with Owner.*—A real estate broker can only recover commissions by virtue of a contract, express or implied, with the owner.

2. BROKERS—*Real Estate Brokers—Commissions—Procuring Cause of Sale.*—To entitle a real estate broker to commissions he must show that he is the procuring cause of the sale.

3. BROKERS—*Real Estate Brokers—Commissions—Volunteer.*—A mere volunteer cannot recover commissions simply because he introduced the customer who finally bought from the owner, for the owner cannot be held for commissions, unless he has expressly or impliedly made himself liable therefor.

4. BROKERS—*Real Estate Brokers—Commissions—Volunteer.*—A real estate broker, authorized to sell property at a fixed price, who tells the owner that he can probably make an exchange with parties who had declined to purchase at that price, is a mere volunteer as to the exchange.

5. BROKERS—*Real Estate Brokers—Commissions—Compliance with Terms of Sale.*—If a real estate broker is employed generally to find a purchaser, and introduces him to the owner, and they negotiate a sale, the broker is entitled to his commissions; but a different rule applies, or should apply, where the terms of the sale or exchange are specifically fixed in advance, and the broker's authority is limited to finding a purchaser who will buy the property upon the prescribed terms. In the latter instance, in the absence of deceit or fraud on the part of the owner, the broker is entitled to no commissions, unless he finds such a purchaser, and such a special contract should not restrain the owner from seeking, in good faith, to find a purchaser for his property on different terms.

6. BROKERS—*Real Estate Brokers—Commissions—Failure to Perform Contract.*—A broker is never entitled to commissions for failing to perform his contract. To entitle him to his commissions he must succeed, and he takes the entire risk of failure, for his reward comes

only as a consequence of his success. He may devote his time and labor and expend his money with ever so much devotion to the interests of the owner, and yet, if he fails to procure a purchaser, abandons his efforts, or his authority is fairly and in good faith terminated, he does not earn his commissions, and it matters not that what he has done proves of use and benefit to the principal.

7. Brokers—*Real Estate Brokers—Commissions—Compliance with Terms— Authority to Sell, not Authority to Exchange—Case at Bar.*—A landowner authorized a broker to sell his property at a specific price. The broker found purchasers who told him that they could not purchase the property unless the landowner would take a house of their own in exchange as part of the consideration. The broker told the purchasers that he had no authority to accept such a proposition, and afterwards informed the landowner of the purchasers' offer. The broker did nothing more. The landowner afterwards sold the property to these purchasers at a smaller price than the broker was authorized to take and took the purchasers' house in exchange as part of the price.

*Held:* That the broker was not entitled to commissions.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Jas. G. Martin & Bro.*, for the plaintiff in error.

*Page, Page & Page*, for the defendant in error.

Prentis, J., delivered the opinion of the court.

This case involves the right of J. D. Stone & Company, Incorporated, hereafter called the broker, to recover of the plaintiff in error, hereafter called the owner, commissions claimed for the sale of real estate. There was a verdict and judgment in favor of the broker, which is here under review.

The owner was endeavoring to sell its property in a locality designated as Winona, and authorized the broker to sell it at the specific price of $14,000.00; without making the broker its general agent or giving it any exclusive right to make the sale, but merely authority to sell it for that price. The broker's agent exhibited the property to two ladies, hereafter called the purchasers, who stated that they could not buy the property unless, as a part of the consideration, they could exchange therefor a house and lot of their own, and the agent of the broker replied that he had no authority to do this, but told them that he would see the owner. Shortly after this the broker's agent met Benson, the secretary of the owner corporation, and told him that he could probably make the exchange with the suggested purchasers, and Benson immediately replied, "I don't think we can do that," but that he would look at the house belonging to the ladies and let the broker know when he would do this. The broker did nothing more. Within a few days thereafter, the owner made a contract with these ladies as purchasers at $13,000.00; of which $8,000.00 was a credit allowed for the purchasers' house taken in exchange. This contract of exchange necessitated the payment of $1,100.00 in cash by the owner to the purchasers, there being liens upon both properties which were mutually assumed. The owner also agreed that if it could sell the property of the purchasers, which it had thus received from the purchasers in exchange, for above $8,000.00 net, the surplus should be paid to these purchasers, and in addition to deliver to them four loads of black soil and to wax the floors on the first floor of the property thus sold to or exchanged with the purchasers. There was a sharp conflict in the evidence as to whether the agent of the broker ever disclosed the names of the two ladies who afterwards became the purchasers from the owner.

It is observed that the broker's authority was special and limited, and that at no time was it authorized to sell the property of the owner for less than $14,000.00. There is an entire absence of proof that at any time these purchasers were either willing or able to buy the property for $14,000.00 or to make any contract with reference thereto unless their property was taken by the owner in exchange.

There was a motion by the owner to set aside the verdict and to enter judgment in its favor as defendant, and the failure to sustain this motion is assigned as error.

[1-4] It is impossible to reconcile either the expressions of the courts or the various cases involving the commissions of real estate brokers, and it would be a thankless and unprofitable task to review a limited number of the cases. There are, however, certain fundamental rules which are everywhere recognized, even if it may appear that they have not always been observed. One of these rules is that such a broker can only recover commissions by virtue of a contract, express or implied, with the owner, and another is that the broker entitled to commissions must show that he is the procuring cause of the sale. It is unnecessary to cite authority for the rule that a mere volunteer cannot recover commissions simply because he introduced the customer who finally bought from the owner, for the owner cannot be held for commissions unless he has expressly or impliedly made himself liable therefor, and so far as the proposition to exchange this property is concerned, the broker here was a mere volunteer whose services were not accepted.

[5] One distinction which seems sometimes to be overlooked is as to the specific character of the employment. If the broker is employed generally to find a purchaser

and introduces him to the owner, and they negotiate a sale, the broker is entitled to his commissions; but a different rule applies or should apply where the terms of the sale or exchange are specifically fixed in advance, and the broker's authority is limited to finding a purchaser who will buy the property upon the prescribed terms. In the latter instance, in the absence of deceit or fraud on the part of the owner, the broker is entitled to no commissions unless he finds such a purchaser, and such a special contract should not restrain the owner from seeking, in good faith, to find a purchaser for his property on different terms.

[6] The general principles may be thus summarized as applicable to the circumstances here shown: A broker is never entitled to commissions for failing to perform his contract. To entitle him to his commissions he must succeed, and he takes the entire risk of failure for his reward comes only as a consequence of his success. He may devote his time and labor and expend his money with ever so much devotion to the interests of the owner, and yet if he fails to procure a purchaser, abandons his efforts, or his authority is fairly and in good faith terminated, he does not earn his commissions.

It is said in *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, 38 Am. Rep. 441, 9 A. L. R. 1199, note, referring to such a state of facts, "He loses the labor and effort which were staked upon success. And in such event it matters not that, after his failure and the termination of his agency, what he has done proves of use and benefit to the principal, in a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to, and materially assist in the consummation of, a sale; he

may have planted the very seeds from which others reap the harvest; but all that gives him no claim. It was part of his risk that, failing himself—not successful in fulfilling his obligation—others might be left to some extent to avail themselves of the fruit of his labors." Summarizing, it is there said: "If after the broker had been allowed a reasonable time within which to produce a buyer and effect a sale, he has failed to do so, and the seller in good faith and fairly has terminated the agency and sought other assistance, by the aid of which a sale is consummated, it does not give the original broker a right to commission, because the purchaser is one whom he introduced and the final sale is, in some degree, aided or helped forward by his previous unsuccessful effort."

It seems to us that these general principles control the case in judgment, and the case of *Long* v. *Flory,* 112 Va. 721, 72 S. E. 723, appears to be conclusive of the view indicated. The facts there were quite similar to those here, the chief difference being the lapse of time— about six months. The brokers there had authority to sell the farm for $16,800.00, and if successful the owner was to receive $16,000.00 and the brokers a commission of $800.00. The brokers interested Cline, and it was agreed that the farm might be sold for $16,000.00, subject to a commission of $500.00 to the brokers, and these terms were never modified. Thereafter, in September, Long, the owner, sold his farm for $15,500.00 to one Rodeffer, who afterwards sold to Cline under circumstances which tended to show that it was purchased for him in the first instance. This court there said: "There is really no conflict of evidence on the controlling features of the agreement between the plaintiffs and the defendant. The former were not to have a commission for a sale at any price, but the price was fixed

at $16,000.00; and unless and until a sale was effected at that sum (or, at least, until a purchaser had been procured who was ready and able to pay the price named), no claim to commissions could arise. Long would, therefore, have been within his rights if he had sold his farm directly to Cline for $15,500.00, unless, of course, in so doing he had thwarted a sale to him by the plaintiffs for $16,000.00. And there is absolutely no evidence of such interference."

"The governing principle in this class of cases is clearly and succinctly stated in the syllabus by the court to *Parker* v. *National Mut. Bldg. & L. Ass'n*, 55 W. Va. 134, 46 S. E. 811, as follows: 'Under a special contract between an owner of real estate and an agent for the sale thereof, on commission, at a price agreed upon, the agent cannot recover his commission without proving that he has actually made a sale at the price stipulated, unless it appear that his principal has wrongfully prevented the making of a sale at such price, which would have been made but for his interference, or has waived the strict performance of the contract.' "

[7] Applying these principles to the facts of this case, we find nothing to indicate that the owner ever modified its contract with the broker, or ever conferred any authority whatever except authority to sell the property for $14,000.00. Nor do we find that the owner either wrongfully or otherwise prevented the making of such a sale at such a price, nor do we find anything from which it can be inferred that the owner has ever in any way waived the strict performance of its contract with the broker. All this being true, we are of opinion that the court erred, both in giving the instruction which permitted the jury to award the broker commissions under the contract, and also in refusing to set aside the verdict and enter judgment for the defendant owner.

It is not necessary for us to consider that line of cases in which recovery has been permitted upon a *quantum meruit,* because neither in the pleadings nor in the conduct of the case before the trial court was this question ever raised. The broker sued upon the express contract alone and has been allowed to recover the commissions specified in the contract, and this without having performed it. A recovery was denied under similar circumstances in *Payseno* v. *Swensen* (C. C.) 178 Fed. 999.

It follows, therefore, that we are of opinion that the case should be reversed and judgment under the statute entered here for the defendant below, who is the plaintiff in error here.

*Reversed.*