# Richmond

NELLIE M. EDWARDS, TRADING AND DOING BUSINESS AS EDWARDS REALTY COMPANY AND THOMAS E. EDWARDS, INDIVIDUALLY AND AS AGENT OF EDWARDS REALTY COMPANY v. ROBERT M. CRAGG.

November 22, 1948.

Record No. 3392.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

*Samuel B. Brown*, for the plaintiffs in error.

*Oren R. Lewis* and *J. Randall Caton, Jr.*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Robert M. Cragg brought this suit against the defendants below, who are plaintiffs in error here, to recover $1,000 which he claimed they had improperly retained as commission on the sale of real estate belonging to the plaintiff. On agreed facts the court tried the case without a jury and rendered a judgment for the plaintiff, which the defendants now seek to reverse.

The stipulated facts were in substance these: Prior to April 24, 1946, Cragg authorized the defendants, real estate brokers, to sell for him certain property in Alexandria at the specified price of $21,000, with the express understanding that the entire sum be paid in cash. For doing so the defendants were to have a commission of five per cent.

On April 24, 1946, the defendants presented to Cragg a contract of sale to Richard G. and Martha W. Waugh on terms other than cash. Cragg rejected this contract, and thereupon the defendants agreed to finance the transaction so that Cragg would in fact receive the $21,000 in cash. Cragg accepted this contract and the Waughs deposited with the defendants $1,000 and agreed to comply with the terms of sale in twenty days.

Shortly after the execution of the contract the defendants

requested Cragg to give the Waughs immediate possession of the property and Cragg consented to do this on the assurance of the defendants that the financing which they had undertaken had been arranged so that Cragg would receive the full purchase price in cash on the agreed settlement date.

However, on the designated settlement date the defendants admitted they were not then able to perform their obligation under the contract and requested a few additional days to complete the arrangements.

On June 14, 1946, the defendants not having then performed, Cragg notified them by letter that he would terminate the contract unless they performed within five days.

On July 16, 1946, Cragg's attorney wrote the defendants that the settlement had been hanging fire for over three months, and that unless they fulfilled their agreement within five days from July 17, Cragg and the purchasers would work out an agreement between themselves and then Cragg would bring suit to recover "$1,000 commission you withheld for services not performed."

Finally, on August 7, 1946 (Wednesday), Cragg gave defendants notice that unless they complied with their contract on or before the following Saturday he would consider the contract rescinded. The stipulation of facts continues: "On receipt of each of the aforesaid notices, defendants gave new promises and assurances that performance on their part would be shortly forthcoming. However, they failed to perform in compliance with each of the above notices, and the vendor terminated the said contract. Thereafter the complainant and the vendees negotiated a new contract on different terms whereby the complainant gave the vendees credit for the $1,000.00 paid to the defendants, took, as part of the purchase price, a promissory note secured by a second purchase money trust in the sum of $4,500.00, and the balance in cash with the understanding that the vendor was subrogated to the rights of the vendees in the return of the $1,000.00 paid to the defendants. The defendant realty firm, having failed and refused to return

the $1,000.00 deposit, this action was brought to recover the same."

On October 1, 1946, after the suit was brought, and again at the beginning of the trial, defendants tendered to the plaintiff $4,500 in payment of the said purchase money trust, which was refused.

In support of their claim for commissions, the defendants say they were the procuring cause of the sale and that by going ahead and selling the property to the Waughs, the plaintiff waived performance of their financing agreement and should be estopped to assert their default.

▉▉ Defendants thus seek to bring themselves within a well-established general rule to the effect that when the owner of property who has placed it with a broker for sale at a certain price, sells the property to the broker's customer at a reduced price, he is liable to the broker for his commissions.

This rule was applied and the broker allowed to recover in *Wilson* v. *Schmidt & Wilson*, 184 Va. 642, 651, 35 S. E. (2d) 737, 741, where the Virginia cases are cited in support of the rule thus quoted from 8 Am. Jur., Brokers, section 190, pp. 1101-2: " 'The rule is well established that if property is placed in the hands of a real-estate broker for sale at a certain price or upon certain terms, and a sale is brought about through the broker as a procuring cause, he is entitled to commissions on the sale even though the final negotiations are conducted through the owner, who in order to make a sale accepts a price less than that stipulated to the broker or terms more liberal than those the latter was authorized to accept.' "

But the agreed facts of this case prevent the application of that rule and bring this case within an exception to the rule, that is as well established as the rule itself. That exception is that if the broker makes a special contract, such as expressly making the payment of commissions depend upon obtaining a certain price for the property, or upon securing certain terms of sale, he cannot recover commissions if he fails to perform that special contract. This ex-

ception is recognized and stated in *Wilson* v. *Schmidt &
Wilson, supra* (184 Va. at p. 652, 35 S. E. (2d) at p. 741),
and Virginia cases supporting it are there cited.

In *Leicht-Benson Realty, etc., Corp.* v. *Stone & Co.*, 138
Va. 511, 515, 121 S. E. 883, 884, 43 A. L. R. 1100, the
owner authorized the broker to sell his property at a
specified price of $14,000. The broker exhibited the prop-
erty to two purchasers, who stated they could not buy un-
less they could exchange with the owner their house and
lot. When the broker communicated this to the owner,
the latter replied he did not think he could do that. A few
days later the owner contracted with the broker's customers
to sell the property to them at $13,000 and take their prop-
erty in on the sale at $8,000. It was held that the broker's
authority was special and limited, and its claim to commis-
sions was denied. The court said:

" * * * A broker is never entitled to commissions for
failing to perform his contract. To entitle him to his com-
missions he must succeed, and he takes the entire risk of
failure for his reward comes only as a consequence of his
success. He may devote his time and labor and expend his
money with ever so much devotion to the interests of the
owner, and yet if he fails to procure a purchaser, abandons
his efforts, or his authority is fairly and in good faith ter-
minated, he does not earn his commissions."

In *Long* v. *Flory & Garber*, 112 Va. 721, 72 S. E. 723,
the right of the brokers to commissions was predicated upon
the consummation by them of a sale at a given price. The
brokers interested Cline but did not effect a sale, and the
owner afterwards sold to a third party who in turn sold to
Cline under circumstances tending to show that he had
in fact purchased for Cline. The claim for commissions
was denied· on the ground that there was a special con-
tract which the broker had not performed.

Here the defendants made a special contract, by which
they agreed to finance the transaction so that the seller
would receive all cash for his property. This agreement
they did not perform, and their failure to perform con-

tinued down to the bringing of the suit, in spite of repeated demands for performance by the seller. Then, because of their continued failure to perform, and after repeated warnings by the seller of the consequences of their failure, the seller terminated the contract and dealt directly with the purchasers, as he had notified the defendants he would do. It is to be remembered, too, that these purchasers were then already in possession of the property, put there at the request of the defendants and in reliance on their promise to fulfill their contract. Not only so, but in order to complete the sale the plaintiff accepted from the purchasers a contract not for all cash, as the defendants had promised, but for $4,500 of the purchase price to be in the form of a second mortgage. It is fair to assume that these less desirable terms were related to the fact that the purchasers were already in possession.

In *Caldwell* v. *Tannehill*, 117 Va. 11, 14, 84 S. E. 6, 7, the broker's undertaking was to sell or contract to sell in writing on or before a given date. The customer whom the broker claimed to have found as ready, willing and able to purchase did not enter into a written agreement and no sale was made. It was said that "The general rule is that a real estate broker, to be entitled to compensation, must show that he has completed his undertaking according to its terms, or that its completion was prevented without his fault by his principal at a time or under circumstances when the latter had no right to interfere. * * * ."

The defendants here failed to procure a purchaser who would buy on the seller's terms. To effect the sale the defendants specifically agreed to finance the transaction to meet those terms. They failed to perform and their authority was terminated—terminated fairly and in good faith, and only after repeated efforts to get them to perform. It would be a strange quirk of the law if the plaintiff must still pay them commissions because he afterwards sold to their original customer on terms substantially less favorable than those they had contracted to supply, but which they had failed to supply after repeated demands. The procur-

ing cause doctrine cannot be stretched that far. There was never a waiver by the plaintiff of the defendants' default. It was because of that default that the seller had to take the matter in his own hands and, in making the sale, accept a mortgage instead of the cash the defendants contracted to give him.

In *Richeson* v. *Wilson*, 187 Va. 536, 545, 47 S. E. (2d) 393, 397, payment of commission was stipulated to be conditioned upon the consummation of a particular sale at a particular price within a specified time. The claim for commission was denied because the brokers failed in the performance of their undertaking, it being "well settled that in an undertaking of this character the broker is not entitled to his commission unless the transaction is consummated, or unless the consummation is prevented by the arbitrary action of the owner." To the same effect, see *Patton* v. *Garnett*, 147 Va. 1009, 133 S. E. 495; *Snider* v. *New River Ins., etc., Corp.*, 187 Va. 548, 47 S. E. (2d) 398; *Duncan* v. *Barbour, ante*, p. 53, 49 S. E. (2d) 260; and *Pittelkow* v. *Jefferson Park Land Co.*, 283 Mich. 374, 278 N. W. 102.

The principle controlling here is well stated in *Backman* v. *Guadalupe Realty Co.*, 78 Cal. App. 347, 248 P. 296. There the owner contracted with the broker that if the latter secured an acceptance of a proposal by the owner to exchange its apartment house for a ranch, on terms stated in the contract, the broker would have a certain commission. The broker was not successful in persuading the ranch owner to make the exchange, but the owner afterwards made the exchange with the ranch owner on less favorable terms and by the help of a third party. In denying the claim for commission, the court said:

" \* \* \* Upon a general contract of employment, certainly, the owner may make concessions to a purchaser without loss of the commission to the broker, but there is a distinction, in fact recognized by the authorities, between a general and special contract of employment in a matter of this kind. It appears that, where the broker has undertaken

a special task by his contract of employment and fails to perform it, the fact of having first introduced the buyer and seller will not entitle him to recover. * * * ."  (248 P. 298).

The judgment of the trial court was right, and is

*Affirmed.*