# Staunton

## Herbert M. Campbell, Trading, Etc. v. Frances Lee Sickels.

September 14, 1955.

Record No. 4400.

Present, All the Justices.

The opinion states the case.

*Jesse, Phillips, Klinge & Kendrick; Ernest T. Gearheart, Jr.* and *Charles Stevens Russell*, for the plaintiff in error.

*Oren R. Lewis*, for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Herbert M. Campbell, a real estate broker, trading as Virginia Realty Company, plaintiff, filed his motion and amended motions for judgment alleging that under a written contract of employment he was entitled to recover of Frances Lee Sickels, defendant, the sum of $21,555.00, five per cent (5%) commissions on the purchase price of two adjacent tracts of land in Arlington County owned by defendant, one containing 56.16 acres and the other 1.32 acres. From a judgment sustaining a demurrer to the motion and amended motions for judgment, plaintiff was granted this writ of error.

Plaintiff filed with his pleadings, as proof of his authority to act as a broker for defendant, a written contract, designated "Sale Agreement", which is in the following words and figures:

"This is an exclusive sales agreement made between Frances Lee Sickels, owner, and Herbert M. Campbell, trading as The Virginia Realty Company, Agent.

"The said owner is the owner of 57.4814 acres, more or less, situated in Arlington County, Virginia, the said tract comprising a tract of 56.1614 acres, more or less, presently leased by the owner to the Federal Government for War Housing Project 44019, known as Shirley Homes, and a tract of 1.32 acres, more or less, lying between the said War Housing Project and the Oakridge School, the entire tract of 57.4814 acres being outlined in red on Plat U/1 attached hereto. She desires to sell the tract outlined in red.

"In consideration of the sum of $10.00 receipt whereof is hereby acknowledged by the owner as received from the agent, the owner herewith gives the agent the exclusive right to find an acceptable purchaser for her upon the following terms:

"1. The sales price is to be not less than $7,500. per acre.

"2. The property is to be sold in parcels of not more than twenty acres in any calendar year, but the owner will give the buyer options to purchase the balance. Option terms will be arranged to the mutual satisfaction of the owner and the purchaser.

"As an alternative to an option agreement, the owner may sell the entire tract at one time, taking payment therefor in installments

protected by deed of trust, the initial payment not to exceed 30% of the selling price.

"3. Taxes and interest on encumbrances will be pro-rated of the date the deeds are delivered.

"4. The purchaser will agree that it will provide access from the property of the owner (not included in this agreement) to Arlington Ridge Road or South Lang Street.

"This agency is effective immediately and will terminate one hundred eighty days from the date hereof.

"The owner agrees to pay the agent a commission of five per cent of the sales price when and as such sales price is received by her. Such commission will be paid upon any sale of the said property, whether by the agent, the owner, or a third party, provided the sale is made within the period of this agreement or, if not made within such period, is (1) made not more than three months after the termination of this agreement and (2) the purchaser's name was first disclosed in writing to the owner by the agent during the period of this agreement.

"The owner agrees that if she reduces the sales price at any time during the period of this agreement, this agency shall be extended, if need be, to a date three months after the date of such reduction, all other conditions of this agreement to remain the same.

"This agreement shall be binding upon the heirs, executors, administrators and assigns of the owner.

"The agent agrees to exercise his best efforts to find a buyer acceptable to the owner and upon the terms outlined herein.

"Arlington, Virginia, March 3rd, 1953."

Plaintiff also alleged that in fulfillment of the obligations imposed by the sale agreement he induced the Associated Developers, Inc. to execute a written offer, designated in the record as "The Contract of Purchase and Sale", to buy the land upon the terms and conditions stated by the owner in the sale agreement; that defendant, without giving any reason, capriciously, arbitrarily and without legal cause, refused to accept this written offer to buy the entire tract or to give him a personal interview whereby the plaintiff and and buyer could and would have agreed to any reasonable modification of the offer to buy, within the scope of his contract of employment satisfactory to the owner; and that this capricious, arbitrary action by the defendant prevented consummation of the sale.

■ Plaintiff devotes a greater part of his argument to the aver-

ments that defendant refused to give him a personal interview to discuss the terms and conditions of sale before his contract expired, thereby wrongfully preventing consummation of the sale. In one paragraph of his amended motion for judgment plaintiff alleged that on or about the 12th of June, 1953, within the time specified in the sale agreement, he obtained a written offer from Associated Developers, Inc. to purchase the entire tract at the price of $7,500.00 per acre, and when he attempted to communicate the offer to defendant he was advised by her then attorney that defendant was too ill to discuss business affairs. The attorney suggested certain changes to be made before the offer was submitted. This offer and the suggested changes were not made a part of the pleadings. In another paragraph of the amended motion he alleged that he secured several other written offers from the same proposed purchaser, the contents of which he tried in vain to deliver to defendant. His letters and a registered letter enclosing copies of the offers were returned unclaimed. Finally, on July 17, 1953, he caused the sheriff to serve a copy of the written offer, upon which he relies to show that he completed his undertaking; that the sheriff's return shows that, not finding the defendant nor any member of her family over sixteen years of age at home upon whom he could serve the same, he posted a copy of the offer on the front door of her residence.

Plaintiff's conclusion from these allegations is that "upon information and belief the said defendant has pursued a course of conduct, which has made it impossible for the plaintiff to see her and communicate said offer personally or to secure her signature to any one of said offers; and has deliberately and steadfastly prevented consummation of a sale to the purchaser produced by this plaintiff."

The demurrer admits as true all allegations of fact properly pleaded, but does not admit the pleader's inferences or conclusions of law.

Plaintiff is entitled to recover his compensation if, within the limited time, he procured a purchaser ready, willing and able to buy the land upon the terms and conditions stated in the contract of employment. This is true even though defendant declined to consummate the sale. Insofar as the right of the plaintiff to recover is concerned, it is immaterial whether defendant refused to discuss the offer with him because of illness or for some other reason. Under the facts averred, defendant is charged with knowledge of

the contents of the contract of purchase and sale, which plaintiff took such care to bring to her attention. If the written offer did not substantially comply with the terms and conditions of the sale to which defendant had agreed, she was under no duty to give plaintiff her reasons for refusal to consummate the sale. She, as well as plaintiff, knew the amount of the purchase price, the terms and conditions upon which she had authorized plaintiff to obtain a buyer. It is not alleged that she misled plaintiff or that she made any misrepresentation. The substance of the allegations on this issue is that she remained silent and gave plaintiff no reason for her refusal to accept the offer to buy.

The duty of a landowner to a broker is different from the duty of a broker to a landowner. The broker occupies a fiduciary relation to his client and so long as that relation continues he is under a legal obligation, as well as a high moral duty, to give his principal loyal service and the benefit of his information as to the property entrusted to him for sale. *Duncan* v. *Barbour*, 188 Va. 53, 49 S. E. (2d) 260; *Kingsland Land Corp.* v. *Lange*, 191 Va. 256, 60 S. E. (2d) 872; *Poff & Co.* v. *Ottaway*, 191 Va. 779, 62 S. E. (2d) 865; 8 Am. Jur., Brokers, § 86, p. 1035; 3 M. J., Brokers, § 13, p. 522.

There is no such confidential relation flowing from the principal to the broker. A principal's contractual duty is to compensate his broker for services rendered in accordance with his contract of employment, and so long as the relation of principal and agent exists to exercise good faith toward him. *Epes' Adm'r* v. *Hardaway*, 135 Va. 80, 115 S. E. 712; *Blydenstein* v. *Bussey*, 161 Va. 460, 171 S. E. 515; *Washington* v. *Garrett*, 189 Va. 57, 52 S. E. (2d) 83.

In 8 Am. Jur., Brokers, § 127, p. 1058, it is said: "One who has contracted that a real estate broker shall have a specified time for the sale of his land would ordinarily have a duty to answer pertinent questions by the broker, but no duty to volunteer information arises except as to the existence of conditions, the ignorance of which might cause the broker to make untrue statements concerning them. There is ordinarily, however, no duty on the part of the principal, as there is on the part of the broker, to keep and render an account of the brokerage transaction, inasmuch as in the ordinary transaction there is no trust and confidence reposed by the broker in the principal as there is by the principal in the broker." Restatement of the Law, 2 A. L. I., Agent and Principal, §§ 434, 435, pp. 1006 and 1009.

■ There is a distinction in the duties imposed upon a broker between a mere listing property for sale with him and a special contract of employment. In commenting upon this distinction, Judge Prentis, in *Leicht-Benson Corp.* v. *Stone & Co.,* 138 Va. 511, at 514, 121 S. E. 883, 43 A. L. R. 1100, said: "One distinction which seems sometimes to be overlooked is as to the specific character of the employment. If the broker is employed generally to find a purchaser and introduce him to the owner and they negotiate the sale, the broker is entitled to his commissions, but a different rule applies, or should apply, where the terms of sale are specifically fixed in advance and the broker's authority is limited to finding a purchaser who will buy the property upon the prescribed terms. In the latter instance in the absence of deceit or fraud on the part of the owner, the broker is entitled to no commission unless he finds such a purchaser . . . . A broker is never entitled to commission for failing to perform his contract. To entitle him to his commissions, he must succeed and he must take the entire risk of failure for his reward comes only as a consequence of his success. He may devote his time and labor and expend his money with ever so much devotion to the interest of the owner and yet if he fails to procure a purchaser" willing, and able to buy upon the terms and conditions fixed by the principal "he does not earn his commissions." This case and many others are reviewed in *Edwards* v. *Cragg,* 188 Va. 564, 50 S. E. (2d) 281.

Defendant owed plaintiff no duty to change or modify the terms and conditions upon which she had agreed to sell the property.

■ The decisive question presented is whether defendant obtained a written offer from a customer ready, willing and able to buy the land at the price and upon the terms and conditions agreed to by her in the contract of employment.

Plaintiff contends that his allegations, admitted to be true by demurrer, clearly show that he has fully performed all duties imposed upon him by the sale agreement. If his allegations and proof support this contention he is entitled to recover. If they do not, defendant is not liable.

The rights of the parties are not dependent upon the memory and testimony of witnesses, but upon two written instruments. One expressly states what acts plaintiff must perform before he is entitled to compensation; the other expressly states how and in what manner he has performed these acts. This necessarily requires a

comparison of the terms and conditions upon which defendant had agreed to sell and the terms and conditions upon which the purchaser procured by plaintiff was willing to buy.

First, we examine the sale agreement and find that defendant gave plaintiff an exclusive right for 180 days from March 3, 1953, to find a purchaser acceptable to her at a minimum price of $7,500.00 per acre, and to pay plaintiff a commission of five per cent (5) of the sale price, when and as such sale price was received by her. It is stated in the contract of employment that the larger tract, 56.16 acres, was under lease to the Federal Government for a war housing project known as Shirley Homes. While it is not expressly so stated, the only reasonable inference to be drawn from this reference to the lease in the contract of employment is that the defendant intended for any purchaser procured by plaintiff to buy this tract, or any part thereof, subject to the rights of the lessee.

The sale agreement specifically provided that the property should be sold in lots of not more than twenty acres in any one calendar year, the owner stating that she *"will* give the buyer *option* to purchase the *balance.* Option terms will be arranged to the mutual satisfaction of the owner and the purchaser."

The sale agreement contains no stipulation as to terms of payment of the purchase price of the first twenty acre lot sold. The failure to state the terms of payment does not affect the validity of the contract. However, "where there is no stipulation as to how the price shall be paid, that is whether on credit or in cash, generally it is held that the broker must produce a purchaser that will pay all cash." *Blankenship* v. *Childress,* 183 Va. 13, 20, 31 S. E. (2d) 302; 8 Am. Jur., Brokers, § 63. Applying this principle to this phase of the contract, the inference is that the parties intended for the buyer to pay in cash the full purchase price ($150,000.00) for the first twenty acres, and if the buyer desired to buy more than twenty acres he and the owner would make mutually satisfactory arrangements as to the terms of payment for the additional acreage desired. Further discussion of this phase of the sale agreement is unnecessary as plaintiff does not claim to have secured a purchaser who desired to buy only twenty acres and take options on the remainder or any part thereof.

Plaintiff based his right to compensation on the alternative provision of the sale agreement. This reads: "As an alternative to an option arrangement, the owner *may sell the entire tract at one time,*

taking payment therefor in installments protected by deed of trust, the initial payment not to exceed 30% of the selling price." (Italics supplied).

It will be noted that the contract expressly states that if the buyer procured by plaintiff bought twenty acres, then the owner *would give such buyer options to purchase the entire tract*. In the alternative provision the owner did not in express terms bind herself to sell the entire acreage. The language used is that the owner *"may sell* the entire tract at one time," thereby expressing a possibility, but making no definite promise to sell.

The logical inference from the provision limiting the sale to twenty acres in any one calendar year and the provision stating that the cash payment should not exceed thirty per cent of the entire purchase price is that defendant intended to receive only approximately thirty per cent of the total purchase price in any calendar year. The land was hers. The purchase price when received would have been hers. She had a right to state how she was willing to be paid. Very probably her reasons for so stipulating were as the trial court found, that she "intended to be protected against having to pay income tax upon the balance, except upon the greatest possible spread as to time, and that the contract in question left her unprotected in that respect."

The sale contract does not state the rate of interest the note or notes evidencing the unpaid purchase price should bear. Six per cent is the legal rate of interest fixed by Code § 6-346. In the absence of an express agreement fixing a lower rate of interest, an agreement to pay the legal rate is implied. See *McVeigh's Ex'or* v. *Howard*, 87 Va. 599, 13 S. E. 31; *Roberts' Adm'or* v. *Cocke, etc.*, 28 Gratt. (69 Va.) 207; *Chapman's Adm'rs* v. *Shepherd's Adm'r, et als.*, 24 Gratt. (65 Va.) 377; 10 M. J., Interest, § 8, p. 592.

The terms and conditions stated in the written offer to buy signed by the Associated Developers, Inc. and plaintiff are not in accord with the terms and conditions set forth in the sale agreement.

As heretofore stated, defendant gave plaintiff and the buyer notice that she had given a lease to the Federal Government on 56.16 acres, and that any purchaser produced by plaintiff would necessarily have to take the 56.16 acres or any part thereof subject to the rights of the named lessee.

The written offer to buy submitted by plaintiff merely referred

to the lease, but, instead of agreeing to buy the property subject to the rights of the lessee, the offer contained a provision requiring defendant to obtain a cancellation of the lease on or before December 15, 1953. This requirement of the purchaser produced by plaintiff is expressed in this language: "The parties hereto recognize that at the present date said property is leased to the United States Government. Inasmuch as the Purchaser requires possession of the property at the date of settlement, it is expressly agreed that settlement of this contract shall take place on December 15, 1953, or such later date that Seller produces evidence to the Purchaser that the present lease of the United States Government has been fully terminated and the buildings now erected on said property have been completely removed from the premises; provided, however, that at the sole option of the Purchaser, the Purchaser may require settlement to be made hereunder at any time prior to the above mentioned date without the necessity of the buildings being demolished."

Defendant did not promise or agree to assume this burden; indeed, from all that appears in the pleadings, she would have been foolish to have done so. It is a matter of common knowledge that a governmental agency is slow, perhaps necessarily so, to surrender any rights acquired by contract or otherwise. Neither did the defendant authorize plaintiff to postpone settlement of the sale for five months or more from June 24, 1953, the date of the written offer. These provisos in the written offer to buy constitute substantial variations from the terms and conditions upon which defendant had agreed to sell. Indeed, if she had accepted them and had failed to obtain a cancellation of the lease or to have the buildings on the premises removed within the time stated, the purchaser would have had a right to assert failure of defendant to comply with the terms and conditions of his offer to buy.

In *Blydenstein* v. *Bussey, supra,* we said (161 Va. 467): "A real estate agent, in order to bind his principal, must strictly conform to the terms and conditions of sale fixed by the owner, and any material variation therefrom is fatal to the validity of the sale. Where property listed for sale is occupied, the time possession is to be surrendered by the owner to the purchaser is a question of importance. In confirming the listing of the property and stating the terms of sale, it was stated that the owner was under a contract with the person in charge until January 1, 1933. The purpose of giving

this information to the agent is apparent. The agent owed to the owner the duty of exercising the utmost good faith, and in attempting to sell the property to offer it only upon the terms and conditions specified. . . . This he failed to do—with knowledge that the owner had no right to oust Lilly (the occupant) from possession until January 1, 1933, he attempted to bind the owner to give possession, regardless of Lilly's rights, on August 1."

A reasonable construction of the sale agreement is that defendant did not desire to bind herself to receive more than approximately 30% of $431,100.00, the total purchase price, in any one calendar year, the payment of the remaining 70% to be secured by deed of trust on the property sold. The written offer to buy submitted by plaintiff does not conform to these requirements.

The terms of payment stated in the written offer to buy are a cash payment of 20% ($86,220.00) of the entire purchase price, payable at the time of settlement (that the buyer had an option to postpone for five months or more from the date of the contract); the balance ($344,880.00) to be evidenced by one promissory note bearing 3% interest, with principal payable in semi-annual installments of $5,000.00 each, the balance payable on or before five years after date of settlement. In other words, the buyer reserved the right to pay as little as $10,000.00 a year, that is $40,000.00 of the principal within four years, leaving due at the end of the five year period $304,880.00, with the further right to pay the entire purchase price any time after January 1, 1954.

The owner agreed that as much as 70% of the purchase price might be deferred and made payable in installments "protected by deed of trust." The only reasonable construction of this language is that the deed of trust should cover the entire tract as security for the balance of the purchase money. The written offer to buy specifically provides that ten acres of the tract should not be included in the deed of trust. In addition, it required the seller to release any one or more acres selected by the buyer on the payment of $7,500.00 for each acre. Under these terms the buyer would have had the right to select the most valuable and marketable acreage of the tract and compel the owner to release the same from the lien, thereby leaving as security for the payment of the unpaid purchase price the least valuable acreage. By no stretch of the imagination can the sale agreement be construed to mean defendant promised to give the buyer any such advantageous terms for payment of the principal as those stated in the written offer to buy.

Defendant made no promise in the sale agreement to dedicate any part of the land for public use. The written offer to buy required the defendant and the trustees in the deed of trust to join in a deed of dedication "of all or any portion of the above described land and also join in execution of any instrument granting rights of way or easement for installation of sewer, water and other utilities without necessity of the purchaser making any payment on account of the deferred purchase price. . . ." These are substantial variations from the terms and conditions stated in the contract of employment.

There is no reference in the sale agreement to zoning or rezoning any part of the two tracts. The written offer to buy required the owner not only not to object to a rezoning, but to join in an application to the proper authorities for any rezoning of the property desired by the buyer. Defendant was interested in the value of all parts of the two tracts of land until she had received the full amount of the purchase money. Furthermore, she owned other land close to or adjoining the two tracts. She, therefore, was vitally interested in the effect that a rezoning of any part of the land in that vicinity would have upon its value. She was under no obligation to plaintiff or the buyer to bind herself to agree to any rezoning of the property.

It is needless to prolong this opinion by reciting in detail other material variations between the terms and conditions of the two instruments, as the foregoing are sufficient to show that plaintiff, without fault of defendant, failed to produce a purchaser willing to buy the property upon the terms and conditions specified by her. The material variations and deviations between the terms and conditions stated in the contract of employment and the written offer to buy were obvious and equally well known to plaintiff as to defendant; at least, each had full opportunity, without hindrance from the other, to note them. Under these circumstances, defendant was under no duty to plaintiff to assign any reasons for her failure or refusal to consummate the sale.

The judgment is

*Affirmed.*