# Richmond

WILLIAM ROTELLA, INDIVIDUALLY, ETC. v. JOSEPH A. LANGE, INDIVIDUALLY, ETC.

March 6, 1961.

Record No. 5189.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*C. Willard Norwood,* for the plaintiff in error.

*Nicholas A. Spinella (Donald B. Vaden; Spinella & Spinella,* on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Joseph A. Lange, a real estate broker, brought this action against William Rotella for commission alleged to be due under a listing agreement for the sale of Rotella's restaurant business called Eton Inn, on Grace street in Richmond. A jury returned a verdict in his favor for $900, the amount claimed, on which the court entered the judgment from which Rotella now appeals. The decisive question presented by the assignments of error is whether the verdict was

contrary to the law and the evidence. The evidence is set forth in a stipulation agreed to between the parties.

By the listing agreement dated September 29, 1957, Rotella, the defendant, placed the property exclusively for a period of 45 days in the hands of the plaintiff, Lange, for sale at a price of $9,000 cash, and agreed to pay to the plaintiff as commission 10% of the sale price. The listing agreement bore a notation which indicated that the defendant was operating the business in property held under a three-year lease.

Baldacci, a salesman employed by the plaintiff, testified that in his efforts to find a buyer he contacted a number of people and finally obtained from Armstrong and Aprahamian an offer in writing dated November 7, 1957, to buy the business for $9,000, part cash and balance in monthly payments secured by chattel mortgage, which offer was rejected by the defendant "as it was not for $9,000.00 all cash." Baldacci then procured another offer in writing from the same persons dated November 8, 1957, for $7,000 all cash, which the defendant also rejected for the same reason. He later procured from the same parties a third written offer dated November 11, 1957, which is the basis of the present action, to buy defendant's business for $9,000 all cash, subject, he testified, "to the following provisions: The offer to be binding on the prospective purchasers only if they could obtain an A.B.C. license, a health permit and a five-year lease on the building." This offer was rejected by Rotella without stating any reason for doing so. Baldacci further testified that the same provisions with regard to A.B.C. license, lease and health permit were included in the two previous offers and that defendant did not at any time express any objection to these provisions. The three written offers were exhibited in evidence.

The plaintiff, Lange, testified that sometime after November 22, 1957 (which was the date of a letter from his attorney to Rotella to the effect that he would be sued if he did not pay the commission), Rotella telephoned him that he was ready to settle this sale for $9,000 cash but he told Rotella it was too late because Aprahamian had already purchased another business.

The offer of November 11, 1957, on which the plaintiff bases his right to commission, stated that it was "subject to securing a board of health permit and a 5 yr. lease at $150 a month being obtained by the purchasers." The two prior offers contained the same provisions.

Aprahamian, one of the offerors and a witness for plaintiff, testi-

fied that he told Rotella that he had had some difficulty before with his A.B.C. license and that he did not think he would be able to get another, and that in the presence of Rotella he had asked an A.B.C. inspector whether his partner could obtain a license in his name if he, Aprahamian, was not able to do so, and the inspector had said no. Aprahamian further testified that they (he and Armstrong) would not have bought Rotella's business if they could not obtain a five-year lease on the building, a health permit and an A.B.C. license. He said that after the offer of November 11, 1957, was rejected he made no attempt to obtain a lease or a license or a health permit on Rotella's business and purchased another business for $25,000 and obtained an A.B.C. license.

Rotella testified that the first two offers were rejected because neither was for $9,000 cash. He said that he did not give Baldacci his reasons for rejecting the offer of November 11, which were that Aprahamian had told him he did not think he could get an A.B.C. license; that he, Rotella, had never been able to obtain more than a three-year lease on the building, and that he did not wish to tie up his property for sixty or ninety days pending Aprahamian's application for a license. This conflict was settled by the jury and the case before us is that he did not give these reasons for rejecting this final offer.

However, it was not the duty of the defendant to give any reason for rejecting the final offer if that offer did not comply with the terms of the sale as fixed by the defendant in the listing agreement. The plaintiff is entitled to recover the agreed commission only if, within the agreed time, he procured a purchaser ready, able and willing to buy the property on the terms stated in the listing agreement. Where the terms of sale are specifically fixed in advance, and the broker's authority is limited to finding a purchaser who will buy the property on the prescribed terms, the broker, in the absence of deceit or fraud on the part of the owner, is not entitled to commission unless he finds such a purchaser. *Campbell* v. *Sickels*, 197 Va. 298, 89 S. E. 2d 14.

If the broker makes a special contract, such as expressly making the payment of commission depend upon paying a certain price for the property, or upon securing certain terms of sale, he cannot recover commission if he fails to perform that special contract. To entitle him to his commission he must succeed, and he takes the entire risk of failure, for his reward comes only as a consequence of his success. *Edwards* v. *Cragg*, 188 Va. 564, 50 S. E. 2d 281; *Leicht-Benson Real-*

*ty, etc., Corp.* v. *Stone & Co.,* 138 Va. 511, 121 S. E. 883, 43 A.L.R. 1100.

In order to form a contract there must be no variance between the acceptance and the offer. "A proposal to accept upon terms varying from those offered is a rejection of the offer and puts an end to the negotiations, unless the party who made the original offer renews it or assents to the modification suggested. Having in effect rejected the offer by his conditional acceptance, the offeree cannot subsequently bind the offeror by an unconditional acceptance." *Richeson* v. *Wilson,* 187 Va. 536, 546, 47 S. E. 2d 393, 398.

Here the listing agreement committed the defendant to sell for $9,000 cash. There were no other terms or conditions, and no agreement to pay commission to the plaintiff on any other sort of sale. By the offer of purchase submitted by the plaintiff the purchasers agreed to pay $9,000 cash only if and when they secured an A.B.C. license, a board of health permit and a five-year lease of the building at $150 a month. One of the prospective purchasers, the only one who testified, stated that they would not have bought the defendant's business if they could not obtain those three things. Their offer to purchase was made subject to those conditions. On its face it could not be enforced against them if they failed to obtain those things. It was in effect a counter offer which had the legal effect of rejecting the defendant's offer of sale. *Richeson* v. *Wilson, supra.*

Clearly the defendant had a right to reject an offer to buy which was not in compliance with his offer to sell. He did not lose that right by not stating all available reasons for rejecting the first two purchase offers. Those offers were completely at variance with the requirement of the listing agreement that the sale must be for $9,000 cash, and defendant was not obliged to give any additional reason for rejecting them. His failure to do so does not estop him from relying on other or additional valid reasons for rejecting the final offer.

The plaintiff having failed to procure a purchaser ready, able and willing to buy according to the terms of the listing agreement, he was therefore not entitled to collect the commission provided for in that agreement.

The judgment appealed from is accordingly reversed and final judgment for the defendant will be entered here.

*Reversed and final judgment.*