## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Schmidt and Wilson, Inc.

v.

Pen-Rea Corporation

February 28, 1968

Case No. A-9139

By JUDGE A. CHRISTIAN COMPTON

The demurrer of the defendant will be sustained.

"A demurrer admits that all material facts which are well pleaded are true. Facts well pleaded, and therefore admitted, are (1) facts expressly alleged, (2) facts which are by fair intendment impliedly alleged, and (3) facts which may be fairly and justly inferred from the facts alleged. Facts sufficiently alleged must be taken as true (unless they are inherently impossible, or contradicted by other facts pleaded) even though the court may be of opinion that it is improbable that they are true. And all reasonable inferences of fact which a trier of facts may fairly and justly draw from the

facts alleged must be considered by the court in aid of the pleading. But the demurrer does not admit the correctness of the conclusions of law stated by the pleader, or that the inferences of fact drawn by the pleader from facts alleged may be fairly and justly drawn therefrom." *Ames* v. *American National Bank*, 163 Va. 1, 37, 38 (1934).

Being guided by these principles, the motion for judgment in this action for a broker's commission states the following case. On or about July 3, 1962, the defendant corporation was the owner of certain real estate located in this City at the northeast corner of Tilden Street and Cutshaw Avenue known as the Tower Building. This realty was the principal asset of the corporation (the truth of this fact, while not set forth in the pleading, was concurred in by counsel for the plaintiff during oral argument of the demurrer). On the same day the defendant, by valid and proper corporate action entered into a listing agreement with the plaintiff wherein it authorized the plaintiff to sell the said property for $465,000.00 and agreed to pay the plaintiff a stated commission if the plaintiff would procure a purchaser ready, willing and able to purchase the said property upon the said terms.

The pleading further shows that the defendant was at the time of the listing, and for some time prior thereto, a close corporation in which one Ready, the president and a director, owned fifty per cent of its stock and one Penzer, the Secretary-Treasurer and a director owned the other one-half of its Stock; that the wife of Penzer is the only other officer or director and she, of course, held no stock of the corporation; that Ready handled the negotiations for the sale of the property with the knowledge, consent and acquiescence of Penzer; that the plaintiff found and procured a purchaser for the property, one Schmitz, who was ready, willing and able to buy the property for $450,000.00; that this price was not acceptable to the defendant; that the plaintiff continued to conduct negotiations with the defendant through Ready with the knowledge and consent of Penzer and finally obtained an offer of $460,000.00 from Schmitz; and that Ready, purport-

ing to act as president of the defendant corporation, signed the following statement on the "exhibit contract":

I/we hereby accept the above offer and agree that Schmidt & Wilson, Incorporated, has, with the signing of this contract by Owner and Purchaser, earned, and I/We agree to pay regular commissions as per tariff of the Real Estate Board of Richmond, Va.

/s/ Pen Rea Corp.
W. J. Ready Pres.

In addition, at that time Ready wrote the following statement on the bottom of the first page of the purported contract:

Being as Louis Penzer agreed to sell at $465,000.00 and in the event of a sale I will pay the difference in the selling price of $5000.00. W. J. Ready.

While it is not specifically alleged, the fact that Schmitz was ready, willing and able to buy the property at $460,000.00 may be fairly and justly inferred from the facts pleaded.

Thereafter, a copy of the writing together with the aforesaid endorsement thereon was forwarded by Ready to Penzer who repudiated the purported agreement to sell at $460,000.00 and refused to cooperate with Ready and the corporation in consummating the sale at $460,000.00.

The plaintiff sues to recover a commission on $460,000.00.

The defendant asserts that the motion for judgment is not sufficient in law because the allegations disclose that the plaintiff failed to procure a purchaser ready, willing and able to buy the defendant's real estate at the only price fixed by appropriate action in due form of law by the defendant. To the contrary, the defendant says, the pleading shows that an offer of $450,000.00 was made by Schmitz on June 26, 1962 followed by a counter offer of $465,000.00 by the defendant. To this another offer of $460,000.00 was made at which time the statement was put on the bottom of the purported contract placing

the plaintiff and Schmitz on notice that the contract as finally drafted was not in accordance with the listing agreement of $465,000.00. The defendant maintains Ready had no actual or apparent authority to bind the defendant to a sale of its principal asset without proper and legal action of the corporation and that the lack of such corporate action is apparent upon the face of the "exhibit contract."

The plaintiff maintains that the effect of the notation by Ready at the bottom of the contract is to make a sale at $465,000.00 so far as the defendant is concerned. It asserts that "no terms, not present in the offer of sale for $465,000.00, were incorporated in the contract" and that "Penzer had no right to repudiate the contract so long as he and the corporation were getting the full benefit (and more) of a sale at $465,000." The plaintiff argues that there has been a legal acceptance of the offer of $465,000.00 because the assent has not materially altered the terms of the offer.

Ready has merely reduced his participation in the proceeds of the sale in order that the acceptance might conform to the offer, the plaintiff says.

Parenthetically it should be pointed out that my notes show that one of counsel for the plaintiff in oral argument asserted that Penzer consented to the sale of $460,000.00 and thereafter repudiated the sale at that price. The inference that the corporation either ratified Ready's action or that the corporation, by proper action, agreed to the sale at $460,000.00 could possibly be drawn from the allegation in paragraph 9 of the motion for judgment wherein it is alleged that Penzer refused to cooperate with the corporation "in consummating *the sale at $460,000.*" (emphasis added). However, the court does not understand this to be the plaintiff's claim in view of its position that the offer of sale at $465,000.00 was accepted without any material variation.

The plaintiff also urges that Ready, by virtue of his position as president and owning one-half of the stock "was" the corporation and could bind the defendant to a contract in this manner citing *Food Products* v. *Pierce*, 154 Va. 74 (1930).

In responding to the argument that since the sale here was actually one at $465,000.00 insofar as the defen-

dant was concerned in view of Ready's promise to pay $5,000.00 himself and therefore the broker is entitled to a commission on a sale at $460,000.00, the defendant argues that this could not be the law. To so rule would allow Ready, by his unilateral act, to obligate the corporation to pay a broker's commission on a $460,000.00 contract when Schmitz could not have enforced his contract against the corporation because it had never officially accepted such a contract. This position is well taken.

The allegations, including the exhibit, show that Ready had no corporate authority to enter into a binding contract of sale of the realty which was its principal asset at any sum less than $465,000.00. This being the case he could not bind it by his unilateral act. In *Mosell Realty Corp.* v. *Schofield*, 183 Va. 782, 790 (1945), the law on this subject is clearly stated as follows:

> It is well settled that the inherent or implied authority of a corporate president is limited to acts within the ordinary course of its business and does not extend to extraordinary and unusual transactions such as the sale and purpose of real estate. . . . By virtue of his office alone, no executive officer or agent of a corporation has any authority to sell or make a contract for the sale of the real estate of the corporation.

The fact that Ready owned fifty per cent of the stock of the corporation did not vest in him the authority to bind the defendant in the absence of orderly corporate approval. *op. cit.* 793. See also Code, Section 13.1-77, in the third paragraph thereof, and *Sterling* v. *Trust Co.*, 149 Va. 867, 878, *et seq.* (1928).

But the plaintiff argues that the defendant, by virtue of Ready's promise to pay $5,000.00, has received the benefit of a sale at $465,000.00. This focuses upon the question of when and under what circumstances the broker is entitled to his commission under a special listing agreement such as is here involved, that is, an undertaking to find a purchaser to buy at a specified price. "If a broker makes a special contract, such as expressly making the payment of commission depend upon

paying a certain price for the property . . . he cannot recover commission if he fails to perform that special contract. To entitle him to his commission he must succeed . . . . " *Rotella* v. *Lange*, 202 Va. 575, 577 (1961). The plaintiff claims he has succeeded here and the defendant says he has not. More precisely to the point in this case is this statement in 12 Am. Jur. 2d, *Brokers*, Section 185, pages 925 and 926 under the heading of "offer or negotiation of contract at variance with terms authorized by principal" that:

> where a broker, instead of procuring a person who is ready, able, and willing to accept the terms his principal authorized him to offer at the time of his employment, procures one who makes a counteroffer more or less at variance with that of his employer, the latter is at liberty either to accept the proposed party upon the altered terms or to decline to do so, without giving the broker his reasons for the refusal. . . . However, there have been a few instances where a contrary result has been reached, notably, where the variation would in effect be beneficial to the principal or the deviation so trivial that it is obvious that the principal is merely seeking to avoid his contract of employment.

*See also* 12 C.J.S., *Brokers*, Section 86(a), ftns. 96 and 98, pp. 195 and 196; 18 A.L.R.2d 376.

While it appears that the defendant corporation may possibly be getting the benefit of a $465,000.00 contract, it does not necessarily follow that the variation in the offer here is a trivial one, or, as the plaintiff urges, an "immaterial variance" entitling the broker to a commission. No case has been cited precisely in point of fact either in Virginia or elsewhere, and the Court has been unable to find one. For two cases wherein the *broker* reduced his agreed commission so that his principal would receive the *net* amount stated in his offer, see *Spence* v. *Lawrence*, 149 N.E.2d 379, 381 (Mass. 1958), and *Katz* v. *Brooks*, 212 N.E.2d 508, 511 (Ill. 1965).

The variance is a very material departure from the offer here, however, because a contract at $460,000.00 with a unilateral promise by Ready that he will pay the difference of $5,000.00 "in the event of sale" is unenforceable by Schmitz for the reason that the corporation has never accepted such a proposition. Moreover, the corporation, by either a suit for specific performance or an action for damages, could not successfully proceed against Schmitz under a contract for $465,000.00, the contract is authorized but which never came into being. This being so, the deviation is material and the broker is not entitled to his commission. *Vandenbergh* v. *Buckingham Corp.*, 142 Va. 397, 411 (1925); 12 A.L.R.2d 1410, 1415, 1427, 1428. To decide otherwise would be to require the corporation here to pay the broker a commission for obtaining a contract which was unenforceable. The plaintiff has rendered ineffective services and has not earned a commission. See *Dailey* v. *Stevenson*, 198 Va. 786, 791 (1957); *Campbell* v. *Sickles*, 197 Va. 298 (1955).

For these reasons the demurrer will be sustained.