## CIRCUIT COURT OF HENRICO COUNTY

Coffey & Co.

v.

Traditional Homes

December 21, 1978

Case No. A-991

BY JUDGE E. BALLARD BAKER

This is an action by a real estate broker for a sales commission.

James Brown, an employee of Coffey & Co., acting as a broker, obtained an offer from Ronald Harper to buy a described home in Huntington subdivision from the defendant owner-builder at $41,600., contingent on a VA loan of $37,500.00 at 8¼%. The defendant accepted the offer. The date of the Sales Contract was March 1, 1975. Settlement was to be on or about May 20, 1975.

The defendant had not built the house under VA supervision, and a VA inspection was required. Application for a VA loan was made on March 14, 1975, to First Mortgage Corporation. The necessary inspection had not been completed by May 20, 1975. On May 30, 1975, Harper and Traditional Homes signed an Occupancy-Possession Agreement with respect to the home involved in the Sales Contract. Under this Agreement, Harper moved in with an obligation to pay rent if the loan was disapproved. The first paragraph of the Agreement provides:

> We hereby accept the above captioned property and do hereby agree to sign all papers to close this purchase and make final settlement in full, when advised by you that all final papers are ready for settlement.

Around July 19, 1975, Traditional Homes received a Compliance Inspection Report from the VA, listing certain objections. Traditional

did not agree with the objections, but looked into the problem and by letter of October 1, 1975, wrote to First Mortgage to see if a hold-back of $1,000.00 could be agreed on.

In November 1975, Traditional had received no rent nor had any loan for Harper been approved. Traditional then filed a pay-or-quit notice against Harper. Harper filed a counter-claim for specific performance. After a while, without the aid of Brown or any representative of the plaintiff, Harper and Traditional worked out an agreement, the price of the house was reduced to $40,900.00, and a VA loan was obtained at 8¾% on a new application. Closing was on April 30, 1976.

As was the case in *Professional Realty* v. *Bender*, 216 Va. 737 (1976), other than the Sales Contract of March 1, 1975, there is no evidence concerning the agreement between Coffey & Co. and Traditional Homes. Under that agreement, Traditional Homes accepted the Harper offer and agreed to pay a 5% commission on the purchase price.

The position of Coffey & Co. is that it produced a buyer ready, willing and able to buy on terms accepted by Traditional Homes, as shown by the Sales Contract. Traditional Homes concedes that a sale was eventually made to this buyer, but says it was pursuant to another deal in which Coffey & Co. played no part. There is also a contention that Brown, for Coffey & Co., agreed to take care of all the details, including following through on the VA loan. As to this point, while Brown admits he volunteered to help and did take Harper to First Mortgage to apply for the VA loan, there is nothing in the Sales Contract that imposes any duty on Coffey & Co. in this respect.

If Harper, within a reasonable time of May 20, 1975, had been unable to complete his side of the March 1, 1975, contract, no commission would be payable. Had he been unable to get the loan, he would not have been able to buy nor would the Sales Contract have been met. *Glascock* v. *James*, 183 Va. 561, 571 (1945).

Harper was unable to get the loan by May 20, 1975, but one reason was that the VA inspection had not been completed. This was not the fault of the plaintiff or of Harper. In fact, when the VA report was completed in July 1975 there were many items which Traditional Homes was required to do, some of which were not done before October 1975.

Failure to complete the sale by May 30, 1975, may or may not have been sufficient to justify Traditional Homes in rejecting Harper. While

I think it would not have been sufficient, that question becomes irrelevant in view of Traditional agreeing to the Occupancy-Possession Agreement of May 30. Whatever position Traditional had due to failure to settle on May 15 was waived by that Agreement on May 30. Under the May 30 agreement, Harper remained bound to purchase the property "when advised by you that all final papers are ready for settlement." Time may have been of the essence to the March 1, 1975, Sales Contract, but it was not in the May 30 agreement.

Counsel cite *Kingsland Land* v. *Lange*, 191 Va. 256 (1950), and *Edwards* v. *Cragg*, 188 Va. 564 (1948).

Traditional points to the rule expressed in *Edwards* v. *Cragg*, at page 569:

> A broker is never entitled to commissions for failing to perform his contract. To entitle him to his commissions he must succeed and he takes the entire risk of failure for his reward comes only as a consequence of his success.

Traditional argues that Coffey & Co. is entitled to commissions only if Harper completed the deal set out in the March 1, 1975, Sales Contract.

Coffey points to the rule expressed in *Kingsland Land* v. *Lange*, at page 261:

> The broker . . . in the absence of a special contract of employment . . . has earned his commission when he produces a purchaser who is accepted by the owner of the land and with whom the latter . . . enters into a valid and enforceable contract . . . .

In my view, Coffey & Co. produced Harper. Harper was ready, willing and able to buy in accord with the March 1, 1975, Sales Contract. His failure to close on May 20, 1975, did not end that contract. On May 30, 1975, Traditional Homes accepted him on an altered basis. Traditional Homes did not have to do this, but it did. Under the May 30 Occupancy-Possession Agreement, the May 20 closing was waived, but Harper remained bound to close when all final papers were ready for settlement. Harper is the buyer procured by Coffey & Co., and Harper is bound to buy. Eventually, the papers were ready for settlement and the sale was completed at $40,900.00.

There was no contractual obligation imposed on Coffey & Co. to prepare the final papers or arrange the loan.

The mere fact that the owner-seller conducts final negotiations, or accepts a price less than the broker was employed to get, does not defeat commissions. *Wilson* v. *Schmidt & Wilson*, 184 Va. 642 (1945); *Edwards* v. *Cragg*, 188 Va. 564, 568 (1948). It is true that this rule does not apply if the broker's contract expressly makes the payment of commission dependent on obtaining a certain price. 12 Am. Jur. 2d., *Brokers*, sect. 225 at p. 967. However, I do not consider the March 1, 1975, Sales Contract as doing such. That was the result of the broker's efforts, not any special contract between the broker and owner making commissions dependent on a certain price.

In my judgment, Coffey & Co. produced Harper and got him committed to a contract. While that contract was still viable Traditional Homes allowed Harper to occupy the home under an agreement which obligated him to buy. Harper eventually bought. The fact that the final terms were not the same as those in the March 1, 1975, contract is not decisive.

Coffey & Co. was the procuring cause of the sale, and is entitled to commissions of 5% on the $40,900.00, less the $500.00 previously paid.