## CIRCUIT COURT OF NORTHUMBERLAND COUNTY

Shore Realty, Inc.

v.

Ivan M. Cowger
and Janie B. Cowger

May 5, 1989

By JUDGE JOSEPH E. SPRUILL, JR.

The issue presented by this case is whether the agent (Plaintiff) has earned a commission pursuant to a listing agreement with owners (Defendants).

Agent's position is that he found buyers ready, willing, and able to purchase the property described in his listing agreement with owners upon terms that would "net" owners precisely what they would have received under the agreement. Although buyer's offer was not equal to the price specified in the listing agreement, agent agreed to reduce his commission so that the net due sellers would be the same as under a full-price-full-commission contract.

In order to prevail, agent must go further than simply show he has produced a contract that would net owners an amount equal to that contemplated under the listing agreement. A case cited by owners, *Poritzky v. Graff*, 415 N.Y.S.2d 375, holds that unless prospective buyers' counteroffer was accepted by owners, no agreement between the buyers and sellers ever came into being, and therefore, the agent was not entitled to a commission.

The determinative issue is, then, if acceptance of the prospective buyers' counteroffer by owners is necessary for agent to prevail, whether the preponderance of the evidence establishes such acceptance. Since there was no written acceptance of the counteroffer, and the

testimony of the witnesses was in conflict on this point, the Court must consider all of the evidence and the inferences reasonably to be drawn therefrom to make this determination.

It is not disputed that agent had buyers ready, willing, and able to buy according to the terms of the listing agreement (except as to the modification of the price and corresponding reduction of commissions). No objections have been raised as to financing, septic, or other contingencies. The sole issue here, the Court believes, is whether sellers accepted the offer made by buyers and agent's offer to reduce his commission. This case differs from some of the cases cited by counsel wherein the stakes of the owners were modified in one way or another by the contract presented by the agent.

The owners advanced several reasons for refusing the counteroffer of buyers. They apparently changed their minds about moving to Florida. Mr. Cowger claimed concern about his financial statements. There was testimony that this was an emotional issue within the owners' family. Finally, owners came to believe the property was underpriced.

On the other hand, the agent was positive in his testimony that Mrs. Cowger agreed orally to the terms set forth in buyers' counteroffer and his, agent's, willingness to reduce his commission. Indeed, Mrs. Cowger herself testified that this arrangement was acceptable to her but that she needed to talk to her husband. The agent called owners on April 8, the day following, and testified that Mrs. Cowger promised to prepare and deliver the addendum to the contract to agent's office the following day. Given agent's diligence in other aspects of this case, it is reasonable to conclude that he believed Mrs. Cowger would prepare the addendum. Mrs. Cowger testified that she did not recall agreeing to prepare the addendum but did not deny that she agreed to do so. It is important to note that Mr. and Mrs. Cowger are experienced in real estate matters, Mrs. Cowger herself being a licensed real estate agent. It is reasonable to conclude that Mrs. Cowger communicated to her husband the counteroffer obtained by the agent from the buyers shortly after she received such offer from the agent. If Mr. Cowger had rejected said offer, it is likely that Mrs. Cowger would have

informed the agent of this rejection when he called on April 8.

On April 9 agent again called the owners, this time speaking to Mr. Cowger and asking permission for the prospective buyers to visit the premises. Agent testified that Mr. Cowger gave such permission and further promised to leave the addendum at agent's office later that day. The Court believes that if indeed either Mr. and Mrs. Cowger had not accepted the counteroffer of buyers, such rejection would have been communicated to the agent at least by April 9. During this period, agent continued to work towards closing. It strikes the Court as being inconsistent for Mr. Cowger to grant permission for the prospective buyers to visit the property while at the same time maintaining that he had rejected the counteroffer. It is clear that agent, during this period, was under the belief that the parties were in agreement. Agent was in periodic contact with sellers, and apparently nothing was said to lead him to believe otherwise.

Owners had no duty to accept any modification to the terms or conditions upon which they agreed to sell the property. *Campbell v. Sickels*, 197 Va. 298 (1955). The decisive question in that case was whether agent obtained an offer from a ready, willing, and able buyer upon terms agreed to by owner. There, the rights of the parties were not dependent upon memory and testimony of witnesses. In the instant case, they are.

A study of the briefs of counsel and the Court's own recollections and notes of the *ore tenus* hearing of April 4, 1989, lead to the conclusion that the counteroffer of the prospective buyers was in fact accepted by the owners, thereby entitling agent to a commission.

Owners argue that paragraph 1 of the listing agreement authorized them to modify the agreement at any time. They argue further that since this listing agreement was prepared by agent, it should be construed against him. This appears to be a standard form contract approved and adopted by the Virginia Association of Realtors and clearly provides the owner with the right to unilaterally modify the agreement. The Court feels, however, that such modification must be made before the existing agreement is acted upon by the agent and other parties. Otherwise, the listing agreement is meaningless as a binding legal instrument.

To say that owners can at any time (even after agent has acted) modify the agreement is to relegate in practical terms the listing agreement to a nullity.

Here, owners did attempt to modify the agreement. The price in the listing agreement was $104,500.00. The counteroffer from the prospective buyers was $101,500.00. An independent appraiser offered by agent opined that the property was worth $100,000.00. Owners' own appraisal, by stipulation, was $112,000.00. After informing agent that they were not going to sell, owners apparently reconsidered and notified agent to market the property at $152,500.00. This tactic could be interpreted as tantamount to withdrawing property from sale, in violation of paragraph 5 of the listing agreement.

It is the opinion of the Court that the owners initially accepted the counteroffer of prospective buyers; that the agent acted upon this acceptance; and that thereafter, for reasons known only to them, owners had second thoughts and withdrew from the contract. This opinion is bolstered to some extent by the fact that owners would receive under the terms of the counteroffer exactly what they would have received under the original listing agreement.

Every contract contains an implied covenant of good faith and fair dealing by all parties in the performance of the agreement. Applying this maxim to the facts of this case and the law as understood by the Court, we hold that the agent has earned his reduced commission and is entitled to judgment against defendants for $7,450.00, with interest from June 1, 1988.